## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| LUXOTTICA GROUP, S.p.A., an Italian corporation, and OAKLEY, Inc., a Washington corporation, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO:** |
| | ) | **1:15-CV-01422-AT** |
| AIRPORT MINI MALL, LLC d/b/a OLD NATIONAL DISCOUNT MALL, a Georgia limited liability company; YES ASSETS, LLC, a Georgia limited liability company; CHIENJUNG YEH a/k/a JEROME C. YEH; JENNY YEH; DONALD C. YEH; and ALICE JAMISON, | ) ) ) ) ) ) ) ) ) | **Pretrial Conference Requested** |
| | ) | |
| Defendants. | ) ) | |

## CONSOLIDATED PRETRIAL ORDER

1.

There are no motions or other matters pending for consideration by the court except as noted:

**By Plaintiffs:**   **Plaintiffs' Motion to Strike Expert Report of Louis Levenson [D.E. 96]. Plaintiffs also intend to file motions *in limine*.**

**By Defendants**:   **Plaintiffs have filed a motion to exclude Louis Levenson, Defendants' expert. Defendants anticipate filing motions *in limine* prior to trial in accordance with the Court's Standing Order.**

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to L.R. 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**By Defendants**:   **The names of the Defendants as they appear in the caption are correct. The Plaintiffs have failed to name any individuals who are alleged to be the direct infringers of their trademarks.**

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**By Plaintiffs: There is no question as to jurisdiction.  Jurisdiction is based on 15 U.S.C. § 1127 and 28 U.S.C. § 1331**

**By Defendants: There is no question as to jurisdiction. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1338.**

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

**Plaintiffs**:     **David B. Rosemberg**
**Florida Bar No. 0582239**
**Admitted *Pro Hac Vice***
**Broad and Cassel**
**2 South Biscayne Blvd.**
**Suite 2100**
**Miami, Florida 33131**
**(305) 373-9400**
**Fax: (305) 373-9443**
**drosemberg@broadandcassel.com**

**Defendants**:          **Marvin Dikeman**
                         **Georgia Bar No. 221760**
                         **Webb, Zschunke, Neary & Dikeman, LLP**
                         **One Securities Centre, Suite 1210**
                         **3490 Piedmont Road, N.E.**
                         **Atlanta, Georgia 30305**
                         **Tel.: (404) 264-1080**
                         **Fax: (404) 264-4520**
                         **mdikeman@wznd.net**

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)). State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

**None.**

7.

The captioned case shall be tried **(X)** to a jury or (_____) to the court without a jury, or (_____) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**None.**

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to Plaintiffs' voir dire questions:

**Defendants object to the following voir dire questions because these questions pre-judge the evidence: 20, 21, 21(a), 21(b), 21(c), 22, 23, 23(a), 23(b), 23(c), 40.**

**Defendants object to question 24 because the criminal nature of counterfeiting is not an issue in this case for civil damages.**

**Defendants object to question 26 because it pre-judges that a trademark has a value to a business and its brand.**

State any objections to defendant's voir dire questions:  None.

State any objections to the voir dire questions of the other parties, if any: **not applicable.**

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

**By Plaintiffs**:     **None.**

**By Defendants**:   **Allstate Insurance Company has filed a separate Declaratory Judgment Action in this Court in order to determine its obligation to provide coverage, indemnification, or a defense to the Defendants for claims asserted in the instant lawsuit filed by the Plaintiffs. Allstate's Declaratory Judgment Action is styled *Allstate Insurance Company v. Airport Mini Mall, LLC, et al.*, Case No. 1:15-CV-03086-AT.**

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar

amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate

8

fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

**By Defendants:   Attachment E contains the stipulations proposed by Plaintiffs. In accordance with the Court's Standing Order, counsel for Defendants intents to meet with counsel for Plaintiffs no later than ten (10) days before the date of the pretrial conference to stipulate to as many facts and issues as possible.**

17.

The legal issues to be tried are as follows:

**For Plaintiffs:**

**(1)    Whether Airport Mini Mall, LLC is contributorily liable for infringement of Luxottica's trademarks.**

**(2)    Whether Airport Mini Mall, LLC is contributorily liable for infringement of Oakley's trademarks.**

**(3)    If Airport Mini Mall, LLC is found to be a contributory infringer, whether such infringement was willful.**

**(4)    Whether Yes Assets, LLC is contributorily liable for infringement of Luxottica's trademarks.**

**(5)    Whether Yes Assets, LLC is contributorily liable for infringement of Oakley's trademarks.**

**(6)    If Yes Assets, LLC is found to be a contributory infringer, whether such infringement was willful.**

(7)    Whether Jerome Yeh is individually liable for the contributory infringement of Airport Mini Mall, LLC.

(8)    If Jerome Yeh is found to be individually liable for the contributory infringement of Airport Mini Mall, LLC, whether his infringement was willful.

(9)    Whether Jerome Yeh is individually liable for the contributory infringement of Yes Assets, LLC.

(10)    If Jerome Yeh is found to be individually liable for the contributory infringement of Yes Assets, LLC, whether his infringement was willful.

(11)    Whether Jenny Yeh is individually liable for the contributory infringement of Airport Mini Mall, LLC.

(12)    If Jenny Yeh is found to be individually liable for contributory infringement of Airport Mini Mall, LLC, whether her infringement was willful.

(13)    Whether Jenny Yeh is individually liable for the contributory infringement of Yes Assets, LLC.

(14)    If Jenny Yeh is found to be individually liable for the contributory infringement of Yes Assets, LLC, whether her infringement was willful.

(15)    Whether Donald Yeh is individually liable for the contributory infringement of Airport Mini Mall, LLC.

(16)    If Donald Yeh is found to be individually liable for the contributory infringement of Airport Mini Mall, LLC, whether his infringement was willful.

(17)    Whether Alice Jamison is individually liable for the contributory infringement of Airport Mini Mall, LLC.

(18)  If Alice Jamison is found to be individually liable for the contributory infringement of Airport Mini Mall, LLC, whether her infringement was willful.

(19)  Whether Alice Jamison is individually liable for the contributory infringement of Yes Assets, LLC.

(20)  If Alice Jamison is found to be individually liable for contributory infringement of Yes Assets, LLC, whether her infringement was willful.

(21) The amount of statutory damages to be imposed per mark, per type of good pursuant to 15 U.S.C. §1117(c) against each Defendant.

(22) Are Plaintiffs entitled to an injunction pursuant to 15 U.S.C. §1125, et. seq.

**By Defendants:**

- Who has the primary duty to defendant Plaintiffs' trademarks—Plaintiffs or Defendants?

- If Plaintiffs are primarily responsible for defending their trademarks, do they have a duty to attempt to protect their marks against alleged infringers of such marks before they can establish any burden on Defendants to do so?

- If Plaintiffs do have the primary duty to defend their trademarks in the context of this action, did the Plaintiffs fulfill their duty to effectively police their trademarks so as to have standing in this present action to compel Defendants to police and protect Plaintiffs' trademarks?

- **Is the leasing and/or subleasing of space by Defendants to tenants or subtenants in the International Discount Mall who are alleged to have sold counterfeit goods, but of whom Defendants have no specific knowledge or notice of such activity, a legally sufficient basis to support a claim of contributory trademark liability?**

- **Are one or more of the Defendants and the store owners in the International Discount Mall in a landlord-tenant relationship as defined by O.C.G.A. § 44-7-1 et seq. (the "Landlord Tenant Act")?**

- **Are the leases entered into by one or more of the Defendants and the store owners in the Internationally Discount Mall valid leases under Georgia law?**

- **If such store owner leases are valid, is each store owner entitled to quiet enjoyment of his or her premises?**

- **If such leases are valid, are the store owner tenants under such leases entitled to all of the protections provided under the Landlord Tenant Act and Georgia law?**

- **Do such protections include the right to trial before dispossessory action and eviction of such tenants from the International Discount Mall?**

- **If store owners are entitled to a dispossessory trial before they can be evicted from the International Discount Mall, does the landlord/Mall have to meet the legal burden of proof in such dispossessory action before the landlord/Mall could prevail and obtain an order to have the Marshall's office evict a store owner?**

- **Is an unsupported claim or allegation that a store owner is selling counterfeit goods in itself legally sufficient evidence to support a claim for a dispossessory action by a Defendant against a store owner in the International Discount Mall?**

- **Did Plaintiffs, if requested by Defendants, have a legal duty to assist Defendants in protecting Plaintiffs' trademarks as a predicate condition of supporting their claim of contributory trademark infringement against Defendants?**

- **Did the individual store owners in the International Discount Mall directly infringe the trademarks of the Plaintiffs?**

- **If so, did the Defendants intentionally induce the store owners to infringe the Plaintiffs' trademarks, or knowingly participate in trademark infringement carried out by the store owners?**

- **Prior to filing suit, did Plaintiffs present legally sufficient evidence to the landlord/Mall to conclude that specific individual store owners in the International Discount Mall directly infringed the trademarks of the Plaintiffs?**

- **Did the Defendants have timely, specific knowledge of any infringement of the Plaintiffs' trademarks by specific store owners in the Mall?**

- **Is the landlord-tenant relationship between the Defendants and the store owners in the International Discount Mall a basis to maintain a sufficient degree of control over the store owners so as to support liability under a contributory trademark infringement theory?**

- **Is general knowledge that counterfeiting may occur at the International Discount Mall sufficient to establish that the Defendants were "willfully blind"?**

- **If the Defendants had no specific knowledge of any specific infringement by any specific tenant, were the Defendants wilfully blind to alleged violations of the Plaintiffs' trademarks by store owners in the Mall?**

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G-3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

**<u>By Plaintiffs</u>**:        **See Attachment J-1.**

**By Defendants:    None.**

**Defendants object to the presentation of witness testimony by deposition if the witness is available at trial. At present, there is no indication that any witness identified by the Plaintiffs in Attachment J-1 would be unavailable for trial.**

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

**See Attachment I-1 for Plaintiffs' Proposed Special Verdict Form**

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

**<u>By Plaintiffs</u>: Plaintiffs respectfully request additional time for argument: opening statements be limited to thirty minutes per side, and closing arguments be limited to one hour per side.**

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

**Not applicable.**

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on _____, 20_____, to discuss in good faith the possibility of settlement of this case. The court (_____) has or (**X**) has not discussed settlement of this case with counsel. It appears at this time that there is:

(_____) A good possibility of settlement.

(_____) Some possibility of settlement.

(**X**) Little possibility of settlement.

(_____) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

28.

The Plaintiffs estimate that it will require **4** days to present their evidence. The Defendants estimate that it will require **5** days to present its evidence. The other parties estimate that it will require (**N/A**) days to present their evidence. It is estimated that the total trial time is **9** days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (_____) submitted by stipulation of the parties or (_____) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this _____ day of _____, 20\_\_\_\_\_.


_____
UNITED STATES DISTRICT JUDGE


Each of the undersigned counsel for the parties hereby consents to entry of the

foregoing pretrial order, which has been prepared in accordance with the form

pretrial order adopted by this court.


*/s/ David B. Rosemberg*_____          */s/ Marvin D. Dikeman*_____
DAVID B. ROSEMBERG                  MARVIN D. DIKEMAN
Florida State Bar No. 582239         Georgia State Bar No. 221760
*Admitted Pro Hac Vice*

**Counsel for Plaintiffs**                  **Counsel for Defendants**

# ATTACHMENT A

## JUROR QUALIFICATION QUESTIONS

**By Plaintiffs:**

1.     Are you at least 18 years of age?

2.     Are you a citizen of the United States?

3.     If English is your second language, do you have any difficulty with reading English or understanding spoken English?

4.     Do you presently and have you for at least the last year resided within the Northern District of Georgia?  The Northern District of Georgia includes the following counties: Banks, Barrow, Bartow, Carroll, Catoosa, Chattooga, Clayton, Cobb, Coweta, Dade, Dawson, DeKalb, Douglas, Fannin, Fayette, Floyd, Forsyth, Fulton, Gilmer, Gordon, Gwinnett, Cherokee, Habersham, Hall, Haralson, Heard, Henry, Jackson, Lumpkin, Meriwether, Murray, Newton, Paulding, Pickens, Pike, Polk, Rabun, Rockdale, Spalding, Stephens, Towns, Troup, Union, Walker, White, and Whitfield.

5.     Do any of you reside in a county other than one of the following Georgia counties that make up the Atlanta Division of the Northern District of Georgia: Cherokee, Clayton, Cobb, DeKalb, Douglas, Fulton, Gwinnett, Henry, Newton, and Rockdale counties.

6.      Are any charges now pending against you for a violation of state or federal law punishable by imprisonment for more than one year?

7.      Have you been convicted of a state or federal crime punishable by imprisonment for more than one year and not had your civil rights restored?

8.      Do you have a physical or mental disability that would interfere or prevent you from serving as a juror?

9.      Do you, a family member or close friend know or have any connection (personal, business, or social) with Luxottica Group S.p.A., Oakley, Inc. and/or any of their current or former employees?

10.     Do you, a family member or close friend know or have any connection (personal, business, or social) with Airport Mini Mall, LLC a/k/a International Discount Mall, Yes Assets, LLC, Chienjung Yeh a/k/a Jerome Yeh, Jenny Yeh, Donald Yeh, Alice Jamison and/or any of the Yeh or Jamison's family members, or their current or former employees?

11.     Are you related by blood or marriage to David Rosemberg, George Mahfood, Rachel Krause, or any member or employee of the law firm of Broad and Cassel, or Lewis Brisbois Bisgaard and Smith, LLP?

12.     Are you related by blood or marriage to Marvin Dikeman, Andrei Ionescu, Louis Bridges, or any member or employee of the law firm of Webb, Zschunke, Neary & Dikeman, LLP?

**By Defendants:**

1.     Do any of you know [names of all witnesses]?

2.     Are any of you related by blood or marriage to the following counsel for the Plaintiffs?

       George G. Mahfood

       David B. Rosemberg

       [List all other lawyers of Broad and Cassel]

       Rachel R. Krause

       [List all other lawyers of Lewis Brisbois Bisgaard & Smith LLP]

3.     Are any of you related by blood or marriage to the following counsel for the Defendants?

       Marvin D. Dikeman

       Melissa C. Patton

       Andrei V. Ionescu

4.     Are any of you related by blood or marriage to the following Defendants?

      Chienjung Yeh/Jerome C. Yeh

      Jenny Yeh

      Donald C. Yeh

      Alice Jamison

5.     Do any of you own stock in, or work for, Luxottica Group, S.p.A., Oakley, Inc., or any subsidiary/division of these companies, such as Ray-Ban, Vogue Eyewear, Persol, Oliver Peoples, Alain Mikli, Arnette, LensCrafters, Sears Optical, Pearle Vision, Sunglass Hut, ILORI, OPSM, Laubman & Pank, and GMO?

6.     Do any of you own stock in, or work for, Airport Mini Mall, LLC or Yes Assets, LLC?

**The Parties request the opportunity to ask any follow-up questions or to submit to the Court such follow up questions to be asked as appropriate due to the response to any question.**

**ATTACHMENT B-1**

**PLAINTIFFS' VOIR DIRE QUESTIONS**

1.    Have you, a family member or close friend ever had any negative experiences with Luxottica Group S.p.A or Oakley, Inc.?

2.    Do you have any strong feelings, positive or negative, about Luxottica Group S.p.A or Oakley, Inc.?

3.    Have you, a family member, or close friend ever purchased Ray-Ban or Oakley merchandise?

   a.    If yes, where did you or your loved one buy your Ray-Ban or Oakley merchandise?

4.    Have you ever received Ray-Ban or Oakley merchandise as a gift?

5.    Have you, a family member or close friend ever had any negative experiences with any Ray-Ban or Oakley merchandise?

6.    Do you have any strong feelings, positive or negative, about Ray-Ban or Oakley merchandise?

7.    Have you, a family member, or close friend ever purchased merchandise from LensCrafters, Sears Optical, Pearle Vision, or Sunglass Hut?

    a.    If yes, have you, a family member or close friend ever had any negative experiences while visiting LensCrafters, Sears Optical, Pearle Vision, or Sunglass Hut?

8.    Do you have any strong feelings, positive or negative, about LensCrafters, Sears Optical, Pearle Vision, or Sunglass Hut?

9.    Have you, a family member or close friend ever had any negative experiences with Airport Mini Mall, LLC a/k/a the International Discount Mall a/ka Old National Discount Mall, Yes Assets, LLC, Chienjung Yeh a/k/a Jerome Yeh, Jenny Yeh, Donald Yeh, or Alice Jamison?

10.    Do you have any strong feelings, positive or negative, about Airport Mini Mall, LLC a/k/a the International Discount Mall a/ka Old National Discount Ma, Yes Assets, LLC, Chienjung Yeh a/k/a Jerome Yeh, Jenny Yeh, Donald Yeh, or Alice Jamison?

11.    Are you a landlord or do you manage real estate?

12.    Have you ever heard of the International Discount Mall a/k/a Old National Discount Mall?

13.    Do you know where the International Discount Mall is located?

14.    Have you, a family member or close friend ever visited the International Discount Mall?

29

     a.    If yes, do you know what kinds of goods are sold at the International Discount Mall?

     b.    If yes, have you, a family member or close friend ever purchased any kind of goods sold at the International Discount Mall?

     c.    If yes, what kinds of goods have you or they purchased at the International Discount Mall?

15.    Have you, a family member or close friend ever rented space at the International Discount Mall?

     a.    If yes, what kind of goods have you or they sold at the space you rented from the International Discount Mall?

16.    Have you, a family member or close friend ever been an International Discount Mall vendor and/or worked for an International Discount Mall vendor or former vendor?

     a.    If yes, what kinds of good or services have you or they sold at the International Discount Mall?

17.    Do you, a family member or close friend know or have any connection (personal, business, or social) with any International Discount Mall vendor or former vendor?

18.   Do you have any strong feelings, positive or negative, about any International Discount Mall vendor or former vendor?

19.   Have you, a family member or close friend ever visited the Old National Village Shopping Center?

      a.   If yes, do you know what kinds of goods are sold at the International Discount Mall?

      b.   If yes, have you, a family member or close friend ever purchased any kind of goods sold at the International Discount Mall?

      c.   If yes, what kinds of goods have you or they purchased at the International Discount Mall?

20.   Have you thought about purchasing a counterfeit or fake product?

21.   Have you, a family member or close friend ever purchased any kind of counterfeit or fake product?

      a.   If yes, where did you, a family member or close friend purchase counterfeit or fake products?

      b.   If yes, which name brand or designer counterfeit or fake products have you purchased?

      c.     If yes, have you, a family member or close friend ever purchased counterfeit or fake Ray-Ban or Oakley products?

22.    Have you ever heard that the International Discount Mall is a place to purchase counterfeit or fake goods?

23.    Have you ever seen what you thought, or believed to be counterfeit or fake product being sold by an International Discount Mall vendor or former vendor?

      a.     If yes, please tell us the name brand or designer you thought, or believed to be counterfeit or fake product being sold by an International Discount Mall vendor or former vendor.

      b.     If yes, have you ever purchased counterfeit or fake product, including counterfeit or fake Ray-Ban or Oakley products, from any International Discount Mall vendor or former vendor?

      c.     If yes, when was the last time (date) you saw or purchased counterfeit or fake product, including counterfeit or fake Ray-Ban or Oakley product from an International Discount Mall vendor or former vendor?

24.    Do you think counterfeiting is a crime?

25.     Do you think the sale of counterfeit or fake brand name or designer product is harmful to the brand and its reputation?

26.     Do you have any knowledge or understanding of what a Trademark is and its value to a business and its brand?

27.     Have you, a family member or close friend ever filed an application and been granted federal registration for a Trademark from the United States Patent and Trademark Office?

28.     Have you, a family member or close friend ever worked for a company that owns Trademarks?

      a.     If yes, was the company ever concerned about infringement of their Trademarks, or infringing the Trademarks of other companies?

29.     Do you, a family member or close friend work for any of the following:

      a.     Law Enforcement

      b.     College Park Police Department

      c.     Homeland Security Investigations

      d.     Immigration & Customs Enforcement

      e.     Private Investigator

       f.      Security firm

30.    Have you, a family member or close friend had a negative experience with a law enforcement agent (including local, state and federal agencies)?

31.    Have you, a family member or close friend had a negative experience with a private investigator?

32.    Have you, a family member or close friend ever been investigated, accused of and/or convicted of a crime or criminal activity?

33.    Have you, a family member or close friend ever been the victim of a crime or criminal activity?

34.    Do you have any education, training, or worked in any of the following fields:

       a.      Accounting

       b.      Banking & Finance

       c.      Intellectual Property (patents, trademarks, copyrights, trade secrets)

       d.      Business Management

       e.      Real Estate

       f.      Sales (Retail/Wholesale)

       g.      Law or Legal Field

       h.    Marketing

       i.    Branding

       j.    Fashion

35.    Have you earned any professional or vocational licenses or certificates?

36.    Have you or a close family member ever been an officer, board member, member or shareholder of a company?

37.    Have you or a close family member ever own or operate your own business?

       a.    If yes, did you or they operate the business under the umbrella of another company such as a DBA?

       b.    If yes, been a limited partner in any type of partnership?

       c.    If yes, been a member in any type of limited liability company?

       d.    If yes, have you ever purchased or sold a business?

       e.    If yes, does the business involve retail sales?

       f.    If yes, have sunglasses or eyeglasses ever been sold at the business.

38.    Have you, a close family member or close friend to you ever received money from a lawsuit, worker's compensation claim, or other claim?

39.     Have you, a close family member, or close friend ever made a claim, or filed a grievance against another person, company, or corporation as a result of wrongful conduct on the part of the person, company or agency?

40.     Do you have any reservations about awarding large sums of money as damages if the evidence justifies the award requested?

Plaintiffs reserve the right to ask any follow-up questions as appropriate due to the response to any question.

## ATTACHMENT B-2

## <u>DEFENDANTS' VOIR DIRE QUESTIONS</u>

1.  Have you ever been represented by, or are you acquainted in any way with, George G. Mahfood, David B. Rosemberg, [list of all other lawyers of Broad and Cassel], Rachel R. Krause, [list all other lawyers of Lewis Brisbois Bisgaard & Smith LLP]?

2.  Have you ever been represented by, or are you acquainted in any way with, any attorney who is currently working with, or who has in the past worked with, the law firms of Broad and Cassel of Miami, FL and Lewis Brisbois Bisgaard & Smith LLP of Albuquerque, NM; Atlanta, GA; Baltimore, MD; Charleston, WV; Chicago, IL; Cleveland, OH; Dallas, TX; Denver, CO; Fort Lauderdale, FL; Fort Wright, KY; Hartford, CT; Houston, TX; Indian Wells, CA; Kansas City, MO; Lafayette, LA; Las Vegas, NV; Lawrenceburg, IN; Los Angeles, CA; Madison County, IL; New Orleans, LA; New York, NY; Newark, NJ; Orange County, CA; Philadelphia, PA; Phoenix, AZl Pittsburgh, PA; Portland, OR; Providence, RI; Raleigh, NC; Sacramento, CA; San Bernardino, CA; San Diego, CA; San Francisco, CA; Seattle, WA; Tampa, FL; Temecula, CA; Tucson, AZ; Weirton, WV; and Wichita, KS.

3.      Have you or any family member received legal training, attended law school, or practiced law?

4.      Have you ever worked for, or are you acquainted in any way with someone who works/has worked for, Luxottica Group, S.p.A., Oakley, Inc., or Ray-Ban?

5.      Have you ever heard of the Old National Village Shopping Center or the International Discount Mall in College Park, Georgia.

6.      Have you ever visited the Old National Village Shopping Center?

7.      Do any of you know anyone who works in a store in the Old National Village Shopping Center?

8.      Have any of you visited the International Discount Mall?

9.      Have any of you ever purchased anything from a store inside the International Discount Mall?

10.     Do any of you know anyone who works in or operates a store inside the International Discount Mall?

11.     Do any of you have any knowledge about the types of goods/merchandise that are sold at the International Discount Mall?

12.     Do any of you own any copyrights, patents, or trademarks?

13. Have any of you ever suspected or known that someone has infringed your copyright, patent, or trademark?

14. Have any of you ever been accused of infringing someone else's copyright, patent, or trademark?

15. Have any of you ever designed sunglasses or eyeglasses, or worked for a manufacturer or designer of sunglasses or eyeglasses?

16. Do any of you have any training, education, or experience that would allow you to determine a genuine item (e.g., clothing, shoes, purse, sunglasses, eyeglasses) from a counterfeit item?

17. Have any of you purchased some item (e.g., clothing, shoes, purse, sunglasses, eyeglasses) that you knew or suspected was counterfeit?

18. Have you or a family member ever been sued by someone or sued someone else, other than a divorce case?

19. Do you know another member of the jury panel prior to today?

20. Have any of you served on a jury before?

21. Have any of you been the foreperson of a jury before?

22. Do any of you have knowledge of the facts and circumstances of this case? If so, will this knowledge prevent you from fairly and impartially deliberating and deciding the case

## ATTACHMENT C

## PLAINTIFFS' OUTLINE OF THE CASE

### I.      Factual summary of Plaintiffs' cause of action.

Luxottica manufactures, markets and sells premium luxury and sports eyewear under various proprietary brands including Ray-Ban. Oakley manufactures, markets and sells premium luxury and sports eyewear under its proprietary Oakley brand.  Oakley is a wholly-owned subsidiary of Luxottica. Luxottica and Oakley both sell their merchandise through their own specialty retail stores, authorized department stores, catalogs and via their own websites. Luxottica and Oakley do not offer their merchandise for sale through individuals, street vendors, unauthorized retail location, or flea markets.

Airport Mini Mall, LLC ("AMM") is the owner and operator of the International Discount Mall, an indoor flea market in College Park, Georgia.   The International Discount Mall is also known as the "Old National Discount Mall." Donald Yeh is the sole member of AMM.  Donald's father, Jerome Yeh is the President of AMM, and Donald's mother, Jenny Yeh is the Vice-President and Secretary of AMM.   Donald's sister, Alice Jamison is AMM's manager.  AMM's financial activities are reported on Jerome and Jenny Yeh's personal federal and state income tax returns.

Jerome Yeh hired Greg Dickerson in 2009 to manage AMM's day-to-day affairs.  Jerome Yeh instructed his daughter Alice Jamison to manage AMM's day-to-day financial affairs, including paying bills, opening the mail, and conferring with Greg Dickerson regarding legal and city matters that involve the flea market. Jamison reports to her father regarding her conversations with Dickerson and matters that hurt AMM's business.  Dickerson also reports to Jerome Yeh at least once a month regarding AMM's business activities.   Jerome Yeh, Jenny Yeh and Alice Jamison are the only signatories authorized on AMM's bank accounts and the only individuals that have issued checks on behalf of AMM.

In 2012, AMM learned that counterfeit merchandise was being offered for sale on its premises, after sports apparel owner, Nike claimed that counterfeit sneakers were being sold by Discount Mall vendors.   In response to Nike's accusation, AMM's on-site manager, Greg Dickerson advised Nike's representatives that he would shut down the vendors once they were proven guilty in court.

In March, 2013, law enforcement agents from the College Park Police Department arrested a Discount Mall vendor Minkaily Kuyateh from his business called H.W. Enterprises at booth J-9 for allegedly selling counterfeits of Louis Vuitton, Burberry, Prada, Chanel, Coach, Juicy Couture, Tiffany, Oakley, Rolex,

and Christian Dior trademarked merchandise.   In April, 2013, the College Park Police Department along with agents from the Immigration and Customs Enforcement ("ICE") division of the United States Department of Homeland Security arrested Discount Mall vendor Abu Barrie from his business called M.K. Trading at booth H-8 for allegedly selling counterfeits of Louis Vuitton, Coach, Chanel, Casio, Burberry, Prada and Juicy Couture and Oakley trademarked merchandise.   A private investigator that specializes in brand protection also accompanied the law enforcement agents.   Defendants' on-site agent spoke with the law enforcement agents and the investigator regarding the vendors' actions and arrest.

On November 21, 2014, ICE agents, along with officers from the College Park Police Department, and accompanied by Luxottica's investigator, Geanie Johansen and other private brand investigators conducted a raid at the Discount Mall, resulting in the seizure of thousands of counterfeit items, including sunglasses, eyeglasses and accessories bearing Ray-Ban and Oakley trademarks that were openly displayed for sale by the Discount Mall's vendors.   Dickerson notified Jerome Yeh, Donald Yeh and Alice Jamison about the November 2014 while it was taking place or soon after.

On December 6, 2014, Luxottica sent a cease and desist letter addressed to AMM's "Owner/Manager" along with a copy to Jerome Yeh's home address notifying AMM and Jerome Yeh that tenants at the Old National Discount Mall were trafficking in counterfeit Ray-Ban and Oakley merchandise. Following receipt of Luxottica's letter, Dickerson claims he approached every booth that carried sunglasses and asked vendors whether they had been convicted of selling counterfeit merchandise and found guilty.   Dickerson received a "no" from everybody.  AMM allowed those vendors to continue operating their businesses at the flea market.

That same month, Defendants received two additional letters from luxury brand owners Louis Vuitton and Coach, putting them on notice that on November 21, 2014 vendors were observed trafficking illegal counterfeit Louis Vuitton and Coach merchandise.  In response to the Louis Vuitton and Coach letters, AMM banned the sale of all items bearing Louis Vuitton and Coach trademarks, real or fake.

On March 26, 2015, Luxottica's investigator, Troy Holub visited the Discount Mall and observed vendors openly displaying and offering for sale Ray-Ban and Oakley trademarked products. Mr. Holub purchased one (1) pair of  Ray-Ban trademarked sunglasses for $10.00 from a vendor located at booth no. A-3.

Luxottica has confirmed that the sunglasses that were purchased by Mr. Holub are counterfeit. On March 30, 2015, Isabel Rozo, a confidential informant working with Ms. Johansen, visited the Discount Mall to look for vendors that were displaying and offering for sale sunglasses bearing Ray-Ban Trademarks. Ms. Rozo purchased four (4) pair of Ray-Ban trademarked sunglasses each for $20.00 from vendors located at booths A-6, B-8, E-8 and J-13-15.   Luxottica has confirmed that the sunglasses purchased by Ms. Rozo are counterfeit.

Luxottica sent AMM and Jerome Yeh a second cease and desist letter dated April, 22, 2015 putting AMM and Jerome Yeh on notice that vendors at booths A-6, B-8, E-8 and J-13-15 were observed trafficking counterfeit merchandise bearing Ray-Ban trademarks.  Dickerson claims that in response to Luxottica's April 22nd letter, he instructed vendors to "remove any not real Ray-Ban or Oakley sunglasses immediately, if they're not real only" and that the vendors complied by removing their sunglasses from display.

On April 23, 2015, Ms. Rozo, working with Ms. Johansen, returned to the International Discount Mall and again observed vendors displaying and offering for sale sunglasses bearing Ray-Ban Trademarks.  Ms. Rozo purchased three (3) pair of Ray-Ban trademarked sunglasses and one pair of Ray-Ban trademarked eyeglasses from $15.00 - $20.00 each from vendors located at booths B-4, F-9, J8-

44

K8.    Luxottica has confirmed that the sunglasses purchased by Ms. Rozo are counterfeit.

No authentic Luxottica Ray-Ban or Oakley merchandise was ever found to be present at the Discount Mall prior to the filing of this lawsuit.    Luxottica and Oakley filed their initial Complaint on April 29, 2015.

On October 12, 2015, Ms. Rozo returned to Discount Mall and again observed vendors displaying and offering for sale sunglasses bearing Ray-Ban trademarks.  Ms. Rozo purchased one pair of Ray-Ban trademarked sunglasses for $15.00 from a vendor located at booth J-15.  Luxottica has confirmed that the sunglasses purchased by Ms. Rozo are counterfeit.

On August 8, 2016, the College Park Police Department, accompanied by Ms. Johansen and other private brand investigators conducted a raid at the Discount Mall, resulting in the seizure of thousands of counterfeit items, including sunglasses and accessories bearing counterfeits of Ray-Ban trademarks that were openly displayed for sale by the Discount Mall's vendors, including repeat offenders at booths J-9-K-8 and J-15.  Luxottica has confirmed that the sunglasses and accessories seized by the College Park Police Department are counterfeit.

AMM's standard lease with its vendors contains a provision that specifies the type of goods that a vendor can offer for sale.  During the course of his job

managing AMM's day-to-day operations, Dickerson walks around the Discount Mall to ensure that vendors are only selling the types of goods specifically authorized by their leases, and he asks non-complying vendors to remove non-authorized items being offered for sale.   AMM's standard lease with its vendors contains a provision that requires vendors to sell merchandise at standard retail pricing, as the other retailers in the mall.

AMM employs security personnel who patrol the mall two to four times a day to have presence and for safety.  AMM's security personnel are instructed to look for gambling and illegal drug activity. Dickerson regularly inspects vendors' booths to look for fire hazards, such as improper wiring, lighting, switches, and any unauthorized extension cords, and to ensure compliance with city code. Dickerson also inspects vendors' booths to make sure vendors have valid business licenses from the City of College Park.

AMM's standard lease with its vendors contains a provision that sale of counterfeit merchandise is prohibited and an event of default that will subject the vendor to termination of its lease.  AMM does not inspect its vendors' merchandise because Dickerson doesn't have time and he thinks that inspections would be ridiculous.   AMM relies on its vendors to police themselves. AMM has never expelled any vendors for violating any of its operating rules, including the rule

prohibiting the sale of counterfeits.  AMM's policy is to allow vendors suspected of counterfeiting to continue operating at the Discount Mall until that vendor is convicted and found guilty of a trademark related crime.

AMM operates the Discount Mall through a lease agreement with Yes Assets, LLC ("Yes Assets"), whereby it pays rent to Yes Assets for use of the flea market property.  Jerome and Jenny Yeh are sole members and owners of Yes Assets, LLC.  Alice Jamison is paid by Yes Assets for the work she performs on behalf of AMM.  Jamison and Greg Dickerson manage the day-to-day affairs of Yes Assets.  AMM's lease agreement with Yes Assets contains several limitations on AMM's use of the leased premises and provides Yes Assets, as property owner and landlord, with various rights in the event its tenant, AMM does not comply with the lease terms:

(a)     Section 7.5 requires AMM to comply with all applicable laws, ordinances and governmental regulations;

(b)     Section 19.1(b) provides that AMM's failure to comply with  any term or provision of the lease, and which such failure is not cured within thirty (30) days constitutes a default under the lease;

(c)     Section 19.1(f) provides Yes Assets, upon AMM's default, with the right to terminate the lease or perform any obligation of AMM if it fails to abide by the terms of the lease.

Under the lease agreement, Yes Assets also provides, maintains and controls the parking areas, sidewalks, loading areas, lighting facilities and other common areas for use by its tenants, including AMM.   Yes Assets maintains a folder that contains all letters received from trademark owners regarding counterfeiting activities at the Discount Mall.  After Luxottica and Oakley filed their lawsuit, Yes Assets sent letters to all tenants stating that counterfeit items are prohibited under their leases.

As a result of the contributory infringement of Luxottica Group and Oakley's trademarks, Luxottica Group and Oakley seek to recover statutory damages under 15 U.S.C. § 1117(c) as well as costs under 15 U.S.C. § 1117 (a) and/or (c). Luxottica and Oakley also seek the issuance of a permanent injunction against Defendants, their officers, agents, employees, tenants and vendors from engaging in activity constituting infringement of any of Luxottica Group's or Oakley's rights in their trademarks.

**II.    Rules, Regulations, Statutes, Ordinances, and Illustrative Case Law Creating a Specific Legal Duty Relied Upon by Plaintiffs**

1.      Contributory trademark counterfeiting and infringement is governed by 15 U.S.C. § 1114.

2.      *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc*., 955 F.2d 1143, 1149–1150 (7th Cir.1992) (applying *Inwood* liability test for contributory trademark infringement to the owner and operator of a flea market where counterfeit items were sold and finding that owner/operator, though lacking actual knowledge, had reason to know of trademark violations of its vendors and by "willfull blindness" deliberately failed to investigate suspected infringing activity by vendors, thereby facilitating ongoing infringement by permitting such vendors to use flea market resources may be subject to contributory liability).

3.      *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 264-265 (9th Cir.1996) (adopting *Hard Rock Cafe's* application of contributory trademark infringement liability to operators of a swap meet who had reason to know of infringing activity after law enforcement officers raided the flea market and seized counterfeit merchandise)

4.      *Coach v. Goodfellow*, 717 F.3d 498 (6th Cir.2013) (holding that facts were sufficient to support a finding of contributory liability as to flea market operator, as "provider of a product or service, i.e., rental booths and storage units

for vendors' who "continued to rent spaces at his flea market to vendors that he knew, or should have known, were engaging in infringing activity").

5. *Babbit Elecs. Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) ("[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing the corporate veil.").

6. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1478 n. 8 (11th Cir. 1991) (stating that the "individual liability standard does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to occur.").

7. *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1522 (11th Cir. 1992) ("[U]nder appropriate facts, contributory trademark infringement might be grounded upon a [defendant's] bad faith refusal to exercise a clear contractual power to halt the infringing activities.").

8. *Luxottica Group, S.p.A. v. Greenbriar Marketplace II, LLC*, 1:15-CV-01382-AT, 2016 WL 5859023, at *2 (N.D. Ga. Sept. 30, 2016) (denying motion for summary judgment of shopping center landlord where the evidence indicated that defendant landlord's actions in maintaining the physical space of the whole of

the shopping center, including the flea market/discount mall, dictating leasing conditions for its tenant/occupants, continuing to lease, continuing to collect rent, refusing to take effective steps to stop the illegal counterfeiting activity was sufficient to give rise to contributory infringement liability).

9.    *Coach, Inc. v. Sapatis,* 994 F.Supp.2d 192 (D.N.H.2014) (finding the defendant's degree of control over the infringer—rather than his or her nominative status as owner, lessor, or lessee—as the determinative factor and denying motion for summary judgment of individual owner and operator of flea market where the evidence viewed in the light most favorable to Coach indicated the defendant exercised sufficient control over the flea market and its vendors for a reasonable jury to hold him contributorily liable for the vendors' conduct).

10.    *Coach Inc. v. Swap Shop, Inc*., 916 F.Supp.2d 1271, 1279 (S.D.Fla.2012) (holding that plaintiffs stated a facially plausible claim that owners and operators of a flea market were either willfully blind of Lanham Act violations or had actual knowledge of them, and were therefore liable for contributory trademark infringement).

11.    Statutory damages pursuant to 15 U.S.C. §1117

12.    Injunctive relief pursuant to 15 U.S.C. §1125, et. seq.

**III.    Damages Sustained by Plaintiffs**

1.    Plaintiffs have elected to recover statutory damages pursuant to the Lanham Act.  In a case involving the use of a counterfeit mark, statutory damages may be awarded in an amount not less than $1,000 or more than $200,000 per mark, per type of goods sold, offered, for sale, or distributed. 15 U.S.C. § 1117(c). In a case involving the willful use of a counterfeit mark, statutory damages may be awarded in an amount not less than $1,000 or more than $2,000,000 per mark, per type of goods sold, offered, for sale, or distributed. 15 U.S.C. § 1117(c).  Plaintiffs seek statutory damages in an amount up to $50 million.  The amount of statutory damages to be awarded to Plaintiffs shall be determined by the jury.     The trademarks and types of goods at issue are set forth below:

| Registration Number | Trademark | Good and Services | Type of Good |
|---|---|---|---|
| 650,499<br><br>RAY-BAN script logo | | FOR: SUNGLASSES, SHOOTING GLASSES, AND OPHTHALMIC LENSES, IN CLASS 26. | Lenses |
| 1,080,886<br><br>RAY-BAN word mark | | FOR: OPHTHALMIC PRODUCTS AND ACCESSORIES – NAMELY, SUNGLASSES; EYEGLASSES; SPECTACLES; LENSES AND FRAMES FOR | Tags/Labels |

| | | | |
|---|---|---|---|
| | | SUNGLASSES, EYEGLASSES, SPETACLES – IN CLASS 9. | |
| **1,093,658** **RAY-BAN** script logo | | FOR: OPHTHALMIC PRODUCTS AND ACCESSORIES – NAMELY, SUNGLASSES; EYEGLASSES; SPECTACLES; LENSES AND FRAMES FOR SUNGLASSES, EYEGLASSES, SPECTACLES AND GOGGLES; AND CASES AND OTHER PROTECTIVE COVERS FOR SUNGLASSES, EYEGLASSES, SPECTACLES– IN CLASS 9. | **Frames** **Cases** **Tags/Labels** |
| **1,320,460** **(RAY-BAN** in circle logo) | | FOR: SUNGLASSES AND CARRYING CASES THEREFOR, IN CLASS 9. | **Cases** |
| **1,726,955** **RAY-BAN** script logo | | FOR: FOR: BAGS; NAMELY, TOTE, DUFFLE AND ALL PURPOSE SPORTS BAGS, IN CLASS 18. FOR: CLOTHS FOR CLEANING OPTHALMIC | **Cleaning Cloths** |

| | | | |
|---|---|---|---|
| | | PRODUCTS, IN CLASS 21. FOR: CLOTHING AND HEADGEAR; NAMELY, HATS, IN CLASS 25. | |
| 3,522,603<br><br>RAY-BAN<br>red logo | | FOR: SUNGLASSES, EYEGLASSES, LENSES FOR EYEGLASSES, EYEGLASSES FRAMES, CASES FOR EYEGLASSES, IN CLASS 9. | Cases<br>Cleaning Cloths<br>Tag/Label |
| 1,990,262<br>Oakley<br>(stretched)<br>w/Ellipse | | 9, 25 PROTECTIVE AND/OR ANTI-GLARE EYEWEAR, NAMELY SUNGLASSES, GOGGLES, SPECTACLES AND THEIR PARTS AND ACCESSORIES, NAMELY REPLACEMENT LENSES, EARSTEMS, FRAMES, NOSE PIECES AND FOAM STRIPS; CASES SPECIALLY ADAPTED FOR PROTECTIVE AND/OR ANTI-GLARE EYEWEAR AND THEIR PARTS AND ACCESSORIES CLOTHING, HEADWEAR AND FOOTWEAR, NAMELY T-SHIRTS, SWEATSHIRTS, BLOUSES, SWEATERS, SPORT SHIRTS, JERSEYS, SWEATPANTS, SKI | Lenses<br>Tags/Labels |

| | | | |
|---|---|---|---|
| | | **PANTS, RACING PANTS, JEANS, COATS, VESTS, JACKETS, HATS, VISORS, CAPS** | |
| **1,980,039 Oakley (stretched)** | | **9, 25  PROTECTIVE AND/OR ANTI-GLARE EYEWEAR, NAMELY SUNGLASSES, GOGGLES, SPECTACLES AND THEIR PARTS AND ACCESSORIES, NAMELY REPLACEMENT LENSES, EARSTEMS, FRAMES, NOSE PIECES AND FOAM STRIPS; CASES SPECIALLY ADAPTED FOR PROTECTIVE AND/OR ANTI-GLARE EYEWEAR AND THEIR PARTS AND ACCESSORIES CLOTHING, HEADWEAR AND FOOTWEAR, NAMELY T-SHIRTS, SWEATSHIRTS, BLOUSES, SWEATERS, SPORT SHIRTS, JERSEYS, SHORTS, TROUSERS, PANTS, SWEATPANTS, SKI PANTS, RACING PANTS, JEANS, COATS, VESTS, JACKETS, SWIMWEAR, HATS, VISORS, CAPS, GLOVES, BELTS, SOCKS, SANDALS AND SHOES.** | **Frames Lenses** |

| | | | |
|---|---|---|---|
| **1,902,660 Oakley (stretched) w/Ellipse** | | **16 PRINTED MATERIAL, NAMELY DECALS AND STICKERS.** | **Cases** |
| **3,151,994 Square O** |  | **9 PROTECTIVE EYEWEAR, NAMELY SPECTACLES, PRESCRIPTION EYEWEAR, ANTI GLARE GLASSES AND SUNGLASSES AND THEIR PARTS AND ACCESSORIES, NAMELY REPLACEMENT LENSES, FRAMES, EARSTEMS, AND NOSE PIECES; CASES SPECIALLY ADAPTED FOR SPECTACLES AND SUNGLASSES AND THEIR PARTS AND ACCESSORIES** | **Frames** |
| **1,984,501 Ellipse** |  | **9, 25 PROTECTIVE AND/OR ANTI-GLARE EYEWEAR, NAMELY SUNGLASSES, GOGGLES, SPECTACLES AND THEIR PARTS AND ACCESSORIES, NAMELY REPLACEMENT LENSES, EARSTEMS, FRAMES, NOSE PIECES AND FOAM STRIPS; CASES SPECIALLY ADAPTED FOR PROTECTIVE** | **Frames Lenses Tags/Label** |

| | | | |
|---|---|---|---|
| | | **AND/OR ANTI-GLARE EYEWEAR AND THEIR PARTS AND ACCESSORIES; CLOTHING AND HEADWEAR, NAMELY T-SHIRTS, SWEATSHIRTS, JACKETS, HATS, AND CAPS** | |
| **3,785,868 Elite Logo** |  | **9 PROTECTIVE EYEWEAR, NAMELY, SPECTACLES, PRESCRIPTION EYEWEAR, ANTI GLARE GLASSES AND SUNGLASSES AND THEIR PARTS AND ACCESSORIES, NAMELY, REPLACEMENT LENSES, FRAMES, EARSTEMS, AND NOSE PIECES; CASES SPECIALLY ADAPTED FOR SPECTACLES AND SUNGLASSES AND THEIR PARTS AND ACCESSORIES** | **Frames** |
| **1,356,297 Word Mark** | | **9, 25 GOGGLES, SUNGLASSES, PROTECTIVE PADS FOR ELBOWS, FEET AND KNEES.  CLOTHING - NAMELY T-SHIRTS; GLOVES; RACING PANTS; HATS; SWEATSHIRTS; SPORT SHIRTS, JACKETS,** | **Frames** |

| | | JEANS, JERSEYS AND SKI PANTS, JACKETS, HATS, GLOVES AND SOCKS. | |
|---|---|---|---|
| 1,908,414 Word Mark | | 16 PRINTED MATERIAL, NAMELY DECALS AND STICKERS. | Cases Tags/Labels |
| 3,331,124 Chrome Ellipse | | 9, 25  PROTECTIVE EYEWEAR, NAMELY SPECTACLES, PRESCRIPTION EYEWEAR, ANTI GLARE GLASSES AND SUNGLASSES AND THEIR PARTS AND ACCESSORIES, NAMELY REPLACEMENT LENSES, FRAMES, EARSTEMS, AND NOSE PIECES; CASES SPECIALLY ADAPTED FOR SPECTACLES AND SUNGLASSES AND THEIR PARTS AND ACCESSORIES; AND PROTECTIVE CLOTHING, NAMELY, RACING PANTS; CLOTHING, NAMELY, T-SHIRTS, BEACH-WEAR, BLOUSES, SPORTS SHIRTS, JERSEYS, SWIMWEAR, SWIMTRUNKS, SHORTS, UNDERWEAR, SHIRTS, PANTS, SKI AND SNOWBOARD PANTS AND JACKETS, JEANS, VESTS, JACKETS, WETSUITS, | Tags / Labels |

|  |  | **SWEATERS, PULLOVERS, COATS, SWEATPANTS, HEADWEAR, NAMELY, HATS, CAPS, VISORS AND FOOTWEAR, NAMELY WETSUIT BOOTIES, SHOES, SANDALS, ATHLETIC FOOTWEAR, ALL PURPOSE SPORTS FOOTWEAR, THONGS AND BOOTS** |  |
|---|---|---|---|
| **1,927,106 Ellipse** |  | **16 PRINTED MATERIAL, NAMELY DECALS AND STICKERS** | **Tags / Labels** |

2.      Plaintiffs also seek costs, prejudgment interest, and attorneys' fees pursuant to § 1117(c) as well as injunctive relief pursuant to 15 U.S.C. § 1125, *et. seq.*

## ATTACHMENT D

## DEFENDANTS' OUTLINE OF THE CASE

Plaintiffs have filed suit to recover damages for alleged contributory trademark violations by Defendants arising from the alleged sale of counterfeit Ray-Ban and Oakley sunglasses by tenants of the International Discount Mall. Plaintiffs have made no effort to recover damages from the actual sellers of the allegedly counterfeit sunglasses. Instead, Plaintiffs have chosen to pursue claims of secondary liability against Defendants, whose only involvement is owning and operating the Mall.

Under Georgia law, a license is defined as authority to do a particular act or series of acts on land of another without possessing any estate or interest therein. As a general rule, a license is revocable at any time. By contrast, tenants at the Mall have a formal lease is subject to the statutory constraints of landlord-tenant law, including dispossessory proceedings. While a flea market could revoke vendors' licenses at will, AMM must prove in Fulton Magistrate Court that Mall tenants have sold counterfeit goods in violation of their leases. Absent admissible proof that counterfeit goods were sold (as opposed to conclusory letters sent by Plaintiffs), eviction proceedings against AMM tenants will not succeed.

As a practical matter, Defendants lack the knowledge, training, and experience necessary to undertake the task of policing Ray-Ban and Oakley trademarks at the Mall. Moreover, every effort Defendants have made to be responsive to Plaintiffs' demands for protecting Plaintiffs' trademarks has been stymied by Plaintiffs' flat refusal to help Defendants identify and dispossess allegedly offending tenants.

As a legal matter, Plaintiffs' claim for contributory trademark infringement is flawed. Potential liability for contributory trademark infringement arises only if Defendants had timely and specific notice regarding Mall tenants who were violating Plaintiffs' trademarks. The absence of such notice is fatal to Plaintiffs' claim. Moreover, Plaintiffs cannot make the requisite showing that Defendants had direct involvement with the alleged infringement, or control of the allegedly infringing tenants at the Mall. Finally, Plaintiffs cannot make the required showing that Defendants were willfully blind to alleged infringement by tenants.

Instead, the record demonstrates that AMM, the only Defendant with a direct relationship and contact with tenants in the Mall, took numerous steps to discourage the sale of infringing merchandise. AMM informed tenants multiple times that counterfeit goods could not be sold at the Mall; made it clear in tenant leases that counterfeit goods could not be sold at the Mall; approached all tenants

who offered sunglasses for sale to make sure that no counterfeits were being sold after receiving Plaintiffs' December 9 letter; instructed all tenants named in Plaintiffs' April 22 letter to remove all Ray-Ban and Oakley sunglasses, whether counterfeit or not or, in the alternative, to have a representative from Plaintiffs contact AMM regarding the authenticity of their sunglasses; affirmatively sought Plaintiffs' help to dispossess tenants; and non-renewed the leases of all tenants named in Plaintiffs' April 22 letter as soon as that became possible.

## Citation of Authority

The authority for Defendants' outline of the case and the defenses raised by the Defendants is more fully discussed in the briefing related to Defendants' motion for summary judgment. An illustrative list of authority previously cited in Defendants' summary judgment briefs is provided below. Defendants may supplement this list of citations in any trial briefs submitted to the Court.

- MDT Corp. v. New York Stock Exch., Inc., 858 F. Supp. 1028, 1034 (C.D. Cal. 1994) ("The owner of a trade name must do its own police work.").

- Mini Maid Servs. Co. v. Maid Brigade Sys., Inc., 967 F.2d 1516, 1520 (11th Cir. 1992) (noting that the franchisor/trademark owner had a duty imposed by law to police the use of its own trademark).

- <u>Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.</u>, 955 F.2d 1143, 1149 (7th Cir. 1992) (trademark holders cannot rely on theories of secondary infringement to require landlords to be guardians of the holder's commercial interests).

- <u>1-800 Contacts, Inc. v. Lens.com, Inc.</u>, 722 F.3d 1229, 1249 (10th Cir. 2013) (liability for contributory trademark infringement must be premised on some direct infringement by a third party).

- <u>Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.</u>, 797 F.3d 1248, 1275 (11th Cir. 2015) (liability exists under doctring of contributory trademark infringement only if Plaintiffs can show that Defendants (a) intentionally induced the tenants of the Mall to infringe Plaintiffs' trademarks, or (b) knowingly participated in a scheme of trademark infringement carried out by the tenants of the Mall).

- <u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.</u>, 545 U.S. 913, 919, 937 (2005) (inducement prong of contributory infringement requires "clear expression," "affirmative steps," or any advertisement or solicitation of any kind by Defendants that "fostered" infringement of Plaintiffs' trademarks or "stimulated" store owners in the Mall to violate Plaintiffs' trademarks).

- <u>Tiffany (NJ) Inc. v. eBay Inc.</u>, 600 F.3d 93, 107 (2d Cir. 2010) ("For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary.").

- <u>Coach, Inc. v. Swap Shop, Inc.</u>, 916 F. Supp. 2d 1271, 1278 (S.D. Fla. 2012) (<u>citing</u> <u>Hard Rock</u>, 955 F.2d at 1149) (willful blindness may be sufficient to support a contributory trademark infringement claim, but mere negligence is not)

- <u>Coach, Inc. v. International Bazaar, Inc.</u>, No. 3:11-CV-1733-N (N.D. Tex. June 7, 2013) (applying principles of <u>Tiffany</u> to bricks-and-mortar defendants under circumstances identical to the circumstances of the present case).

- 15 U.S.C. § 1117

- <u>Forsyth Cty. v Waterscape Servs., LLC</u>, 303 Ga. App. 623, 634, 694 S.E.2d 102, 112-113 (2010) (holding that under Georgia law, a license "is defined as authority to do a particular act or series of acts on land of another without

possessing any estate or interest therein, and that, as a general rule, a license is revocable at any time).

- O.C.G.A. § 44-7-1, et seq. (Landlord Tenant Act)

- O.C.G.A. § 44-7-50, et seq. (describing dispossessory proceedings)

## ATTACHMENT E

## STIPULATED FACTS

**Stipulations proposed by Plaintiffs:**

1.      Plaintiff Luxottica Group S.p.A. ("Luxottica Group") is an Italian corporation with its principal place of business in Milan, Italy.

2.      Plaintiff Oakley, Inc. is a corporation organized and existing under the laws of the State of Washington, having its principal place of business in Foothill Ranch, California. Plaintiff Oakley is an indirect, wholly-owned subsidiary of Luxottica Group S.p.A.

3.      Luxottica Group manufactures markets and sells premium luxury and sports eyewear under various proprietary brands including Ray-Ban and Oakley.

4.

Oakley, Inc. owns the following federally registered trademarks: Oakley (stretched) w/ Ellipse – U.S. Trademark Registration No. 1,990, 262, No. 1,902,660; Oakley (stretched) – U.S. Trademark Registration No. 1,980,039; Square O – U.S. Trademark Registration No. 3,151,994; Ellipse – U.S. Trademark Registration Nos. 1,984,501 and 1,927,106; Elite – U.S. Trademark Registration No. 3,785,868; Word Mark – U.S. Trademark Registration Nos. 1,356,297 and 1,908,414; Chrome Ellipse – U.S. Trademark Registration No. 3,331,124.

5.     Luxottica Group owns the following federally registered trademarks: RAY-BAN script logo – U.S. Trademark Registration No. 650,499, 1,093,658, 1,726,955; RAY-BAN word Mark – U.S. Trademark Registration No. 1,080,886; RAY-BAN in circle logo – U.S. Trademark Registration No. 1,320,460; RAY-BAN red logo – U.S. Trademark Registration No. 3,522,603.

6.     Luxottica and Oakley do not offer their merchandise for sale through individuals, street vendors, unauthorized retail locations, or flea markets.

7.     Airport Mini Mall, LLC ("AMM") is the owner and operator of the International Discount Mall, an indoor flea market in College Park, Georgia.

8.     Donald Yeh is the sole member of AMM.

9.     Donald's father, Jerome Yeh is the President of AMM.

10.     Donald's mother, Jenny Yeh is the Vice-President and Secretary of AMM.

11.     Donald's sister, Alice Jamison was AMM's manager.

12.     Between 2009 and 2015, AMM's financial activities were reported on Jerome and Jenny Yeh's personal federal and state income tax returns.

13.     Jerome Yeh hired Greg Dickerson in 2009 to manage AMM's day-to-day affairs.

14.     Jerome Yeh instructed his daughter Alice Jamison to manage AMM's day-to-day financial affairs, including paying bills, opening the mail, and conferring with Greg Dickerson regarding legal and city matters that involve the flea market.

15.     Jamison reports to her father regarding her conversations with Dickerson and matters that hurt AMM's business.

16.     Dickerson reports to Jerome Yeh at least once a month regarding AMM's business activities.

17.     Donald Yeh authorized Jamison to handle AMM's business affairs.

18.     Jerome Yeh, Jenny Yeh and Alice Jamison are the only signatories identified on AMM's bank accounts.

19.     Jerome Yeh, Jenny Yeh and Alice Jamison are the only individuals that have issued checks on behalf of AMM.

20.     In 2012, AMM learned that counterfeit merchandise was being offered for sale on its premises, after sports apparel owner, Nike claimed that counterfeit sneakers were being sold by Discount Mall vendors.

21.     In response to Nike's accusation, Greg Dickerson advised Nike's representatives that he would shut down the vendors once they were proven guilty in court.

22.     In March, 2013, law enforcement agents from the College Park Police Department arrested a Discount Mall vendor Minkaily Kuyateh from his business called H.W. Enterprises at booth J-9 for allegedly selling counterfeits of Louis Vuitton, Burberry, Prada, Chanel, Coach, Juicy Couture, Tiffany, Oakley, Rolex, and Christian Dior trademarked merchandise.

23.     In April, 2013, the College Park Police Department along with agents from the Immigration and Customs Enforcement ("ICE") division of the United States Department of Homeland Security arrested Discount Mall vendor Abu Barrie from his business called M.K. Trading at booth H-8 for allegedly selling counterfeits of Louis Vuitton, Coach, Chanel, Casio, Burberry, Prada and Juicy Couture trademarked merchandise.

24.     On November 21, 2014, ICE agents, along with officers from the College Park Police Department conducted a raid at the Discount Mall, resulting in the seizure of thousands of items, including sunglasses, eyeglasses and accessories bearing Ray-Ban and Oakley trademarks.

25.     Dickerson notified Jerome Yeh, Donald Yeh and Alice Jamison about the November 2014 while it was taking place or soon after.

26.    On December 6, 2014, Luxottica sent a cease and desist letter addressed to AMM notifying it that tenants at the Old National Discount Mall were trafficking in counterfeit Ray-Ban and Oakley merchandise.

27.    Following receipt of Luxottica's letter, Dickerson claims he approached every booth that carried sunglasses and asked vendors whether they had been convicted of selling counterfeit merchandise and found guilty.

28.    AMM allowed those vendors that had been arrested or had merchandise seized during the raid to continue operating their businesses at the flea market.

29.    Defendants received two additional letters from luxury brand owners Louis Vuitton and Coach, putting them on notice that on November 21, 2014 vendors were observed trafficking illegal counterfeit Louis Vuitton and Coach merchandise.

30.    In response to the Louis Vuitton and Coach letters, AMM banned the sale of all items bearing Louis Vuitton and Coach trademarks, real or fake.

31.    On March 26, 2015, Troy Holub purchased one (1) pair of counterfeit Ray-Ban sunglasses for $10.00 from a vendor located at booth no. A-3.

70

32.     On March 30, 2015, Isabel Rozo purchased four (4) pair of Ray-Ban trademarked sunglasses each for $20.00 from vendors located at booths A-6, B-8, E-8 and J-13-15.

33.     Luxottica sent AMM a second cease and desist letter dated April, 22, 2015 putting AMM on notice that vendors at booths A-6, B-8, E-8 and J-13-15 were observed trafficking counterfeit merchandise bearing Ray-Ban trademarks.

34.     Dickerson claims that in response to Luxottica's April 22nd letter, he instructed vendors to "remove any not real Ray-Ban or Oakley sunglasses immediately, if they're not real only" and that the vendors complied by removing their sunglasses from display.

35.     On April 23, 2015, Ms. Rozo purchased three (3) pair of Ray-Ban trademarked sunglasses and one pair of Ray-Ban trademarked eyeglasses from $15.00 - $20.00 each from vendors located at booths B-4, F-9, J8-K8.

36.     On October 12, 2015, Ms. Rozo purchased one pair of Ray-Ban trademarked sunglasses for $15.00 from a vendor located at booth J-15.

37.     On August 8, 2016, the College Park Police Department conducted a raid at the Discount Mall, resulting in the seizure of thousands of items, including sunglasses and accessories bearing Ray-Ban trademarks.

38.    AMM's standard lease with its vendors contains a provision that specifies the type of goods that a vendor can offer for sale.

39.    During the course of his job managing AMM's day-to-day operations, Dickerson walks around the Discount Mall to ensure that vendors are only selling the types of goods specifically authorized by their leases, and he asks non-complying vendors to remove non-authorized items being offered for sale.

40.    AMM's standard lease with its vendors contains a provision that requires vendors to sell merchandise at standard retail pricing, as the other retailers in the mall.

41.    AMM employs security personnel who patrol the mall two to four times a day to have presence and for safety.

42.    AMM's security personnel are instructed to look for gambling and illegal drug activity.

43.    Dickerson regularly inspects vendors' booths to look for fire hazards, such as improper wiring, lighting, switches, and any unauthorized extension cords, and to ensure compliance with city code.

44.    Dickerson also inspects vendors' booths to make sure vendors have valid business licenses from the City of College Park.

45.     AMM's standard lease with its vendors contains a provision that sale of counterfeit merchandise is prohibited and an event of default that will subject the vendor to termination of its lease.

46.     AMM does not inspect its vendors' merchandise because Dickerson doesn't have time and he thinks that inspections would be ridiculous.

47.     AMM relies on its vendors to police themselves.

48.     Between January 1, 2012 and April 23, 2015, AMM never expelled any vendors for violating the rule prohibiting the sale of counterfeits.

49.     AMM's policy is to allow vendors suspected of counterfeiting to continue operating at the Discount Mall until that vendor is convicted and found guilty of a trademark related crime.

50.     AMM operates the Discount Mall through a lease agreement with Yes Assets, LLC ("Yes Assets"), whereby it pays rent to Yes Assets for use of the flea market property.

51.     Jerome and Jenny Yeh are sole member and owners of Yes Assets, LLC.

52.     Jamison is paid by Yes Assets for the work she performs on behalf of AMM.  Jamison also manages the day-to-day affairs of Yes Assets.

53.     AMM's lease agreement with Yes Assets contains several limitations on AMM's use of the leased premises and provides Yes Assets, as property owner and landlord, with various rights in the event its tenant, AMM does not comply with the lease terms:

(a)     Section 7.5 requires AMM to comply with all applicable laws, ordinances and governmental regulations;

(b)     Section 19.1(b) provides that AMM's failure to comply with  any term or provision of the lease, and which such failure is not cured within thirty (30) days constitutes a default under the lease;

(c)     Section 19.1(f) provides Yes Assets, upon AMM's default, with the right to terminate the lease or perform any obligation of AMM if it fails to abide by the terms of the lease.

54.     Under the lease agreement, Yes Assets also provides, maintains and controls the parking areas, sidewalks, loading areas, lighting facilities and other common areas for use by its tenants, including AMM.

55.     Yes Assets maintains a folder that contains all letters received from trademark owners regarding counterfeiting activities at the Discount Mall.

56.     After Luxottica and Oakley filed their lawsuit, Yes Assets sent letters to all tenants stating that counterfeit items are prohibited under their leases.

74

**By Defendants**:    **Attachment E contains the stipulations proposed by Plaintiffs. In accordance with the Court's Standing Order, counsel for Defendants intents to meet with counsel for Plaintiffs no later than ten (10) days before the date of the pretrial conference to stipulate to as many facts and issues as possible.**

**ATTACHMENT F-1**

**<u>PLAINTIFFS' WITNESS LIST</u>**

**<u>Plaintiffs will call</u>:**

1.     John J. Stewart (corporate representative)
       Luxottica North America
       12 Harbor Park Drive
       Port Washington, New York 11050

2.     Jason Groppe, Esq. (corporate representative)
       Luxottica North America
       4000 Luxottica Place
       Mason, Ohio 45040

3.     Geanie Johansen
       Phoenix Consulting & Investigations, Inc.
       6175 Hickory Flat Hwy.
       Suite 110-105
       Canton, GA  30115

4.     Isabel Rozo
       Phoenix Consulting & Investigations, Inc.
       6175 Hickory Flat Hwy.
       Suite 110-105
       Canton, GA  30115

5.     Troy Holub
       Luxottica North America
       Asset Protection
       100 Greenwood Industrial Parkway
       McDonough, GA 30253

6.     Special Agent Special Agent J.D. Cannon,
       U.S. Department of Homeland Security
       1100 Centre Pkwy.
       Atlanta, Georgia 30344

7.    Det. Dustin Matthews
      Brookhaven Police Department
      2665 Buford Hwy.
      Brookhaven, Georgia 30324

8.    Airport Mini Mall (corporate representative (video deposition & live))

9.    Yes Assets (corporate representative (video deposition & live))

10.   Jerome Yeh (video deposition & live)

11.   Donald Yeh (video deposition & live)

12.   Alice Jamison

13.   Jenny Yeh

14.   Gregory Dickerson
      3631 Blakeford Way
      Marrietta, Georgia 30062

15.   Shari Escher
      DRE Investigations
      3760 Sixes Road # 126
      Canton, GA 30114

**Plaintiffs may call:**

16.   Steven Chen, CPA
      3319 Chamblee Dunwoody Road
      Chamblee, GA 30341

17.   Thomas Aiken
      2401 Telluride Drive
      Douglasville, GA 30135
      Detective Matthews

18.   Steve Behringer
      3843 Vinyard Ct., NE
      Marietta, GA  30062-5225

19.   Sergeant Jermeir Jackson-Stroud
      College Park Police Department
      3717 College St.
      College Park, GA 30337

20.   Lt. George Wilson
      College Park Police Department
      3717 College Street
      College Park, GA  30337

21.   Wayne Grooms (investigator)
      Blazer Investigations
      2003 Monterosa Rd.
      Concord, NC  28025

22.   Yoro Bagayoko
      4300 Flat Shoals Rd., #1009
      Union City, GA 30291

23.   Mariam Jalloh
      1708 Camden Forrest Trl
      Riverdale, GA 30296


24.   Any witnesses identified in Defendants' Will Call or May Call witness lists.

25.   Any witnesses needed for rebuttal.

**ATTACHMENT F-2**

**DEFENDANTS' WITNESS LIST**

Defendants may have present at trial:

1.      Jason Groppe

2.      Geanie Johansen

3.      Isabel Rozo

4.      Troy Holub

5.      Greg Dickerson

6.      Louis Bridges

7.      Robert Wright

8.      All individual Defendants

9.      Louis Levenson

10.    Steve Chen

11.    Det. Hardwick

12.    J.D. Cannon

13.    William M. Davis; Bovis, Kyle, Burch & Merlin, LLC, 200 Ashford Center

         North, Suite 500, Atlanta, Georgia 30338

14.    Norman Johnson

15.    Detective Jackson Stroud, College Park Police Department

16.     Issam Mussa, 7175 Amberleigh Way, Duluth, Georgia 30097

17.     Rahim Pirani, 6212 Story Circle, Norcross, Georgia 30093

18.     Luther Owens, Jr., 11688 Kades Trail, Hampton, Georgia 30228

## ATTACHMENT G-1

## PLAINTIFFS' TRIAL EXHIBIT LIST

| Exhibit No. | Description of Exhibit |
|---|---|
| 1. | Luxottica 2011 Annual Report |
| 2. | Luxottica 2012 Annual Review |
| 3. | Luxottica 2012 Annual Report |
| 4. | Luxottica 2013 Annual Review |
| 5. | Luxottica 2013 Annual Report |
| 6. | Luxottica 2014 Annual Review |
| 7. | OneSight 2014 Annual Review |
| 8. | Luxottica 2014 Annual Report |
| 9. | Luxottica 2015 Annual Review |
| 10. | Luxottica 2015 Annual Report |
| 11. | Certified Luxottica 2009 Annual Report Form 20-F |
| 12. | Certified Luxottica 2010 Annual Report Form 20-F |
| 13. | Certified Luxottica 2011 Annual Report Form 20-F |
| 14. | Certified Luxottica 2012 Annual Report Form 20-F |
| 15. | Certified Luxottica 2013 Annual Report Form 20-F |
| 16. | Certified Luxottica 2014 Annual Report Form 20-F |
| 17. | Certified Luxottica 2015 Annual Report Form 20-F |
| 18. | Summary of Luxottica's Annual Advertising and Marketing expenses (2011 – 2015) |
| 19. | Printout from Luxottica's website re company info, counterfeit education, marketing, and various products |
| ~~20.~~ | ~~Company profile from Luxottica website~~ |
| ~~21.~~ | ~~Photo of Luxottica website homepage~~ |
| 22. | Mission Statement from Luxottica's website |
| 23. | Luxottica's website Counterfeit Education Page |
| 24. | Photograph from Ray-Ban website |
| 25. | Printout of Ray-Ban articles |
| 26. | |
| 27. | |
| 28. | |
| 29. | |

| 30. | |
|---|---|
| 31. | |
| 32. | |
| 33. | |
| 34. | |
| 35. | |
| 36. | |
| 37. | |
| 38. | |
| 39. | |
| 40. | |
| 41. | |
| 42. | |
| 43. | |
| 44. | |
| 45. | |
| 46. | |
| 47. | |
| 48. | |
| 49. | |
| 50. | |
| 51. | |
| 52. | |
| 53. | |
| 54. | |
| 55. | |
| 56. | |
| 57. | |
| 58. | |
| 59. | |
| 60. | |
| 61. | |
| 62. | |
| 63. | |
| 64. | |
| 65. | |

| | |
|---|---|
| 66. | |
| 67. | |
| 68. | |
| 69. | |
| 70. | |
| 71. | |
| 72. | |
| 73. | |
| 74. | |
| 75. | |
| 76. | |
| 77. | |
| 78. | |
| 79. | |
| 80. | |
| 81. | |
| 82. | |
| 83. | |
| 84. | |
| 85. | |
| 86. | |
| 87. | |
| 88. | |
| 89. | |
| 90. | |
| 91. | |
| 92. | |
| 93. | |
| 94. | |
| 95. | |
| 96. | |
| 97. | |
| 98. | |
| 99. | |

| 100. | Certified Business Filings for Yes Assets, LLC 2004 – 2016 (Certificate of Organization, Transmittal Information, Articles of Organization, Annual Registration for 2006 - 2016) |
|------|----------------------------------------------------------------------------------------------------------------------|
| 101. | Operating Agreement for Yes Assets, LLC |
| 102. | Articles of Organization for Yes Assets, LLC |
| 103. | Certified Business Filings for Airport Mini Mall, LLC 2009 – 2016 (Articles of Organization, Certificate of Organization, Annual Registration for 2010, 2014, 2015, 2016) |
| 104. | Operating Agreement for Airport Mini Mall, LLC |
| 105. | Articles of Organization for Airport Mini Mall |
| 106. | 2012 Corporation Annual Registration for Airport Mini Mall, LLC |
| 107. | 2009 Tax Returns for Jerome Yeh and Jenny Yeh |
| 108. | 2010 Tax Returns for Jerome Yeh and Jenny Yeh |
| 109. | 2011 Tax Returns for Jerome Yeh and Jenny Yeh |
| 110. | 2012 Tax Returns for Jerome Yeh and Jenny Yeh |
| 111. | 2013 Tax Returns for Jerome Yeh and Jenny Yeh |
| 112. | 2014 Tax Returns for Jerome Yeh and Jenny Yeh |
| 113. | 2011 Tax Returns for Donald Yeh |
| 114. | 2012 Tax Returns for Donald Yeh |
| 115. | 2013 Tax Returns for Donald Yeh |
| 116. | 2014 Tax Returns for Donald Yeh |
| 117. | Yes Assets, LLC, Statement of Operations-Income Tax Basis, 2010, 2009 |
| 118. | Yes Assets, LLC,  Statement of Operations-Income Tax Basis, 2012, 2011 |
| 119. | Financial Statement of Yes Assets, LLC dated December 31, 2011 and 2010 |
| 120. | Financial Statement of Yes Assets, LLC dated December 31, 2014 and 2013 |
| 121. | Airport Mini Mall, LLC Statement of Operations-Income Tax Basis, 2010, 2009 |
| 122. | Airport Mini Mall, LLC Statement of Operations-Income Tax Basis, 2012, 2011 |
| 123. | Financial Statement of Airport Mini Mall, LLC dated December 31, 2011 and 2010 |
| 124. | Financial Statement of Airport Mini Mall, LLC dated December 31, 2014 and 2013 |

| 125. | Yes Assets, LLC 2009 Form 1096 with 1099 |
| 126. | Yes Assets, LLC 2011 Form 1096 with 1099s |
| 127. | Yes Assets, LLC 2012 Form 1096 with 1099s |
| 128. | Yes Assets, LLC 2013 Form 1096 with 1099s |
| 129. | Yes Assets, LLC 2014 Form 1096 with 1099s |
| 130. | Yes Assets, LLC 2011 1099: Dickerson Realty & Jamison Cost Consultant, LLC |
| 131. | Yes Assets, LLC 2012 1099: Jamison Cost Consultant, LLC & Marvin R. Johnson |
| 132. | Yes Assets, LLC 2013 1099: Jamison Cost Consultant, LLC |
| 133. | Yes Assets, LLC 2014 1099: Jamison Cost Consultant, LLC |
| 134. | Airport Mini Mall, LLC 2009 Form 1096 with 1099s |
| 135. | Airport Mini Mall, LLC 2010 Form 1096 with 1099s |
| 136. | Airport Mini Mall, LLC 2011 Form 1096 with 1099s |
| 137. | Airport Mini Mall, LLC 2012 Form 1096 with 1099s |
| 138. | Airport Mini Mall, LLC 2013 Form 1096 with 1099s |
| 139. | Airport Mini Mall, LLC 2014 Form 1096 with 1099s |
| 140. | Airport Mini Mall, LLC 2011 1099: Doraville Property & Lawrence George |
| 141. | Airport Mini Mall, LLC 2011 1099: Verdantis, LLC & Yes Assets, LLC |
| 142. | Airport Mini Mall, LLC 2011 1099: Yes Assets, LLC |
| 143. | Airport Mini Mall, LLC 2012 1099: Dickerson Realty Services, LLC & Doraville Property |
| 144. | Airport Mini Mall, LLC 2012 1099: Yes Assets, LLC |
| 145. | Airport Mini Mall, LLC 2013 1099: Verdantis, LLC |
| 146. | Airport Mini Mall, LLC 2013 1099: Yes Assets, LLC |
| 147. | Airport Mini Mall, LLC 2014 1099: Yes Assets, LLC |
| 148. | Airport Mini Mall, LLC 2014 1099: Verdantis, LLC |
| 149. | City of College Park Occupation Airport Mini Mall Tax Return Renewal Form Sample Worksheet for 2010 |
| 150. | Map of International Discount Mall |
| 151. | Old National Village Shopping Center Lease Agreement between Airport Mini Mall and Yes Assets, LLC dated 12/1/09, signed by Alice Jamison and Donald L. Yeh |
| 152. | Old National Village Shopping Center Lease Agreement between Airport Mini Mall and Yes Assets, LLC dated 12/1/09, signed by Jerome Yeh and Alice Jamison |

| 153. | Old National Discount Mall Vendors List 2009 - 2010 |
|------|------|
| 154. | Old National Discount Mall Vendors List dated 8/29/12 |
| 155. | Alien Tattoo Vendor Agreement 2010 (H-4) |
| 156. | Alhaji Fashion Vendor Agreement 2010 (Z-3) |
| 157. | Mina Fashion Vendor Agreement 2010 (N-3) |
| 158. | Sukuta Fashion f/k/a T.K. Fashion Vendor Agreement 2010 (N-13) |
| 159. | Tony's Men Wear Vendor Agreement 2010 (F-8 & 9A) |
| 160. | Class Act Vendor Agreement 2010 (H-7 & 8) |
| 161. | M.K. Trading Vendor Agreement 2010 (H-7 & 8) |
| 162. | K Plus Vendor Agreement 2010 (F-8 & 9A) |
| 163. | Diallo Express Vendor Agreement 2010 (M-14) |
| 164. | Dior Trading Vendor Agreement 2011 (A1, 7 & 8) |
| 165. | Hip Hop Clothing Vendor Agreement 2011 (H-12) |
| 166. | West African Corp. Vendor Agreement with Amendment 2012 & 2013(A-10) |
| 167. | Touba Fashion Vendor Agreement 2012 (G-8 & 9) |
| 168. | Dior Trading Vendor Agreement 2012 (A-1) |
| 169. | L-Fashion Vendor Agreement 2012 (L-7) |
| 170. | Hip Hop Clothing Vendor Agreement 2012 (H-12) |
| 171. | Why-O-Fashion Vendor Agreement 2012 (F-7) |
| 172. | Kansato Enterprises, Inc. Vendor Agreement with Amendment 2011 & 2012 (B-1) |
| 173. | General Business Vendor Agreement 2013 (N-7) |
| 174. | Sambala Fashion Vendor Agreement 2013 (J-7) |
| 175. | K.S. Fashion Vendor Agreement 2013 (C 8 & 9) |
| 176. | Jallow Fashion Vendor Agreement 2013 (Z-4) |
| 177. | Mar Communications, LLC Vendor Agreement 2013 (A-8) |
| 178. | Sillahs A Tenant Vendor Agreement 2013 (E-4) |
| 179. | Dior Trading Vendor Agreement 2013 (A-1) |
| 180. | M.K. Trading Vendor Agreement 2013 (H-7) |
| 181. | Tru Flavaz Tenant Vendor Agreement 2013 (W-9) |
| 182. | 2013 Handwritten Note from G-3, 4 & G-5, 6 |
| 183. | Mama Lamin Dukureh Vendor Agreement 2013 (E-8A) |
| 184. | FM Fashion Vendor  Agreement 2013 (F-5) |
| 185. | Jalloh Fashion Vendor Agreement 2013 (N-11 & 12) |
| 186. | H.W. Enterprize Vendor Agreement 2013 (J-9 / K -8) |

| 187. | Creator of All Creations Vendor Agreement 2013 (W-1A & B) |
|------|-----------------------------------------------------------|
| 188. | K & H Children Fashion Vendor Agreement 2013 (L-13) |
| 189. | Haddy & Fatima Vendor Agreement 2013 (A-12 ) |
| 190. | One Fashion Vendor Agreement 2014 (J-4/5) |
| 191. | Mama Lamin Dukureh Vendor Agreement 2014 (E-8A) |
| 192. | African Fashion Tenant Vendor Agreement 2014 (A-11) |
| 193. | Unique Collection Vendor Agreement 2014 (L1 / M1) |
| 194. | B.J. International Vendor Agreement 2014 (J-13 & 14) |
| 195. | D-Spot Vendor Agreement 2014 (A-4-5-6) |
| 196. | H.W. Enterprize Vendor Agreement 2014 (J-9 / K -8) |
| 197. | Jallow Fashion Vendor Agreement 2014 (Z-4) |
| 198. | M.K. Trading Vendor Agreement 2014 (H-7 & 8) |
| 199. | B & D Fashion Vendor Agreement 2014 (Z-2) |
| 200. | L-Fashion Vendor Agreement 2014 (L-7) |
| 201. | L-Fashion Vendor Agreement 2014 (L-4) |
| 202. | Jalloh Fashion Vendor Agreement 2014 (N-11 & 12) |
| 203. | Dior Trading Vendor Agreement 2014 (A-1) |
| 204. | A.J. Fashion Vendor Agreement 2014 (L-5) |
| 205. | Caribbean Food and Natural Juices Vendor Agreement 2014 |
| 206. | West Indies Tenant Vendor Agreement 2014 (N-10) |
| 207. | H and H Beauty and Barber Lounge Vendor Agreement 2014 (A-16) |
| 208. | H.W. Enterprize Vendor Agreement 2015 (J-9 / K -8) |
| 209. | Jallow Fashion Vendor Agreement 2015 (Z-4) |
| 210. | B & D Fashion Vendor Agreement 2015 (Z-2) |
| 211. | M.K. Trading Vendor Agreement 2015 (H-7 & 8) |
| 212. | Class Act Tenant Vendor Agreement 2015 (G-5&6) |
| 213. | D-Fine Handbags Vendor Agreement 2015 (E-8A) |
| 214. | L-Fashion Vendor Agreement 2015 (L-4) |
| 215. | B.J. International Vendor Agreement 2015 (J-13 & 14) |
| 216. | D-Spot Vendor Agreement 2015 (A-4-5-6) |
| 217. | L-Fashion Vendor Agreement 2015 (L-7) |
| 218. | Dior Trading Vendor Agreement 2015 (A-1) |
| 219. | Jalloh Fashion Vendor Agreement 2015 (N-11 & 12) |
| 220. | Archebald's Bar & Grill Vendor Agreement 2015 |
| 221. | Eat Heavenly Cupcakes Vendor Agreement 2015 (A-17) |
| 222. | T.J. Fashion Vendor Agreement 2015 (C-10) |

| | |
|---|---|
| 223. | African Fashion Tenant Vendor Agreement 2015 (A-11) |
| 224. | A.J. Fashion Vendor Agreement 2015 (L-5) |
| 225. | Vendor Agreement 2015 (D-1 & D-2) |
| 226. | Fortou Jatta Vendor Agreement 2015 (B-8) |
| 227. | International Discount Mall Operating Hours December 2009 |
| 228. | Notice re: "Children in the International Discount Mall" |
| 229. | Notice re: "Smoking in the International Discount Mall" |
| 230. | Notice re: Gambling in the International Discount Mall |
| 231. | Notice re: Drug Dealing in the International Discount Mall |
| 232. | Notice re: "What your Business can sale & New 2015 Lease information" |
| 233. | Notice re: "What your Business can sale & NO WHOLESALING, 2015" |
| 234. | Notice re: "No Wholesaling, No Manufacturing & Non-Authentic merchandise & What your Business can sale" |
| 235. | Letter from International Discount Mall to Booth N-9 re: "Business selling merchandise outside of its lease agreement" |
| 236. | Airport Mini Mall, LLC Check #1858 |
| 237. | Airport Mini Mall, LLC Check #1784 |
| 238. | Airport Mini Mall, LLC Check #1785 |
| 239. | Airport Mini Mall, LLC Check #1787 |
| 240. | Airport Mini Mall, LLC Check #1786 |
| 241. | Yes Assets, LLC Check #1872 |
| 242. | Yes Assets, LLC Check #1877 |
| 243. | Airport Mini Mall, LLC Check #1791 |
| 244. | Airport Mini Mall, LLC Check #1792 |
| 245. | Yes Assets, LLC Check # 1883 |
| 246. | Airport Mini Mall, LLC Check #1796 |
| 247. | Airport Mini Mall, LLC Check #1803 |
| 248. | Yes Assets, LLC Check #1887 |
| 249. | Airport Mini Mall, LLC Check #1806 |
| 250. | Airport Mini Mall, LLC Check #1807 |
| 251. | Yes Assets, LLC Check #1893 |
| 252. | Airport Mini Mall, LLC Check #1810 |
| 253. | Airport Mini Mall, LLC Check #1811 |
| 254. | Airport Mini Mall, LLC Check #1817 |

| | |
|---|---|
| 255. | Yes Assets, LLC Check #1908 |
| 256. | Airport Mini Mall, LLC Check #1831 |
| 257. | Airport Mini Mall, LLC Check #1835 |
| 258. | Airport Mini Mall, LLC Check #1839 |
| 259. | Airport Mini Mall, LLC Check #1841 |
| 260. | Yes Assets, LLC Check #1924 |
| 261. | Yes Assets, LLC Check #1941 |
| 262. | Airport Mini Mall, LLC Check #1910 |
| 263. | Airport Mini Mall, LLC Check #1983 |
| 264. | Airport Mini Mall, LLC Check #2000 |
| 265. | Yes Assets, LLC Check #2078 |
| 266. | Yes Assets, LLC Check #2119 |
| 267. | Yes Assets, LLC Check #2123 |
| 268. | Airport Mini Mall, LLC Check #2020 |
| 269. | Yes Assets, LLC Check #2124 |
| 270. | Airport Mini Mall, LLC Check #2074 |
| 271. | Yes Assets, LLC Check #2137 |
| 272. | Airport Mini Mall, LLC Check #2108 |
| 273. | Airport Mini Mall, LLC Check #2107 |
| 274. | Airport Mini Mall, LLC Check #2115 |
| 275. | Airport Mini Mall, LLC Check #2113 |
| 276. | Airport Mini Mall, LLC Check #2128 |
| 277. | Airport Mini Mall, LLC Check #2127 |
| 278. | Yes Assets, LLC Check #2202 |
| 279. | Airport Mini Mall, LLC Check #2149 |
| 280. | Airport Mini Mall, LLC Check #2164 |
| 281. | Airport Mini Mall, LLC Check #2172 |
| 282. | Airport Mini Mall, LLC Check #2241 |
| 283. | Airport Mini Mall, LLC Check #2254 |
| 284. | Airport Mini Mall, LLC Check #2256 |
| 285. | Airport Mini Mall, LLC Check #2255 |
| 286. | Airport Mini Mall, LLC Check #2257 |
| 287. | Airport Mini Mall, LLC Check #2288 |
| 288. | Airport Mini Mall, LLC Check #2282 |
| 289. | Airport Mini Mall, LLC Check #2306 |

| 290. | Expense Bill for November 2014 to Yes Enterprises Group c/o Airport Mini Mall, LLC |
|---|---|
| 291. | Fax Cover Sheet to Airport Mini Mall re: February 2014 Cleaning Bill |
| 292. | Fax Cover Sheet to Airport Mini Mall re: November 2014 Cleaning Bill |
| 293. | Wachovia Non-Personal Signature Card for Yes Assets, LLC |
| 294. | Wachovia Non-Personal Signature Card for Airport Mini Mall, LLC |
| 295. | Wachovia Consolidated Statements 1/2010 – 10/2010 |
| 296. | Wachovia Deposit Tickets for Airport Mini Mall Account ending in 2317 |
| 297. | Check Receipts for Airport Mini Mall, LLC |
| 298. | IGM ATM Management, Inc. Site Location Agreement |
| 299. | Wells Fargo Business Records Declaration |
| 300. | 1/1/2012 - 1/31/2012 Wells Fargo Statement |
| 301. | 2/1/2012 - 2/29/2012 Wells Fargo Statement |
| 302. | 3/1/2012 - 3/31/2012 Wells Fargo Statement |
| 303. | 4/1/2012 - 4/30/2012 Wells Fargo Statement |
| 304. | 5/1/2012 - 5/31/2012 Wells Fargo Statement |
| 305. | 6/1/2012 - 6/30/2012 Wells Fargo Statement |
| 306. | 7/1/2012 - 7/31/2012 Wells Fargo Statement |
| 307. | 8/1/2012 - 8/31/2012 Wells Fargo Statement |
| 308. | 9/1/2012 - 9/30/2012 Wells Fargo Statement |
| 309. | 10/1/2012 - 10/31/2012 Wells Fargo Statement |
| 310. | 11/1/2012 - 11/30/2012 Wells Fargo Statement |
| 311. | 1/1/2013 - 1/31/2013 Wells Fargo Statement |
| 312. | 2/1/2013 - 2/28/2013 Wells Fargo Statement |
| 313. | 3/1/2013 - 3/31/2013 Wells Fargo Statement |
| 314. | 4/1/2013 - 4/30/2013 Wells Fargo Statement |
| 315. | 5/1/2013 - 5/31/2013 Wells Fargo Statement |
| 316. | 6/1/2013 - 6/30/2013 Wells Fargo Statement |
| 317. | 7/1/2013 - 7/31/2013 Wells Fargo Statement |
| 318. | 8/1/2013 - 8/31/2013 Wells Fargo Statement |
| 319. | 9/1/2013 - 9/30/2013 Wells Fargo Statement |
| 320. | 10/1/2013 - 10/31/2013 Wells Fargo Statement |
| 321. | 11/1/2013 - 11/30/2013 Wells Fargo Statement |
| 322. | 12/1/2013 - 12/31/2013 Wells Fargo Statement |
| 323. | 1/1/2014 - 1/31/2014 Wells Fargo Statement |

| 324. | 2/1/2014 - 2/28/2014 Wells Fargo Statement |
|------|---------------------------------------------|
| 325. | 3/1/2014 - 3/31/2014 Wells Fargo Statement |
| 326. | 4/1/2014 - 4/30/2014 Wells Fargo Statement |
| 327. | 5/1/2014 - 5/31/2014 Wells Fargo Statement |
| 328. | 6/1/2014 - 6/30/2014 Wells Fargo Statement |
| 329. | 7/1/2014 - 7/31/2014 Wells Fargo Statement |
| 330. | 9/1/2014 - 9/30/2014 Wells Fargo Statement |
| 331. | 10/1/2014 - 10/31/2014 Wells Fargo Statement |
| 332. | 12/1/2014 - 12/31/2014 Wells Fargo Statement |
| 333. | 1/1/2015 - 1/31/2015 Wells Fargo Statement |
| 334. | 2/1/2015 - 2/28/2015 Wells Fargo Statement |
| 335. | 4/1/2015 - 4/30/2015 Wells Fargo Statement |
| 336. | 7/1/2015 - 7/31/2015 Wells Fargo Statement |
| 337. | Fortou Jatta Vendor Agreement 2013 (B-8) |
| 338. | Class Act Art Vendor Agreement 2013 (G 3 & 4) |
| 339. | Class Act Vendor Agreement 2013 (G 5 & 6) |
| 340. | Class Act Vendor Agreement 2014 (G 5 & 6) |
| 341. | Class Act Art Vendor Agreement 2015 (G 3 & 4) |
| 342. | |
| 343. | |
| 344. | |
| 345. | |
| 346. | |
| 347. | |
| 348. | |
| 349. | |
| 350. | |
| 351. | |
| 352. | |
| 353. | |
| 354. | |
| 355. | |
| 356. | |
| 357. | |
| 358. | |
| 359. | |

| 360. | |
|------|---|
| 361. | |
| 362. | |
| 363. | |
| 364. | |
| 365. | |
| 366. | |
| 367. | |
| 368. | |
| 369. | |
| 370. | |
| 371. | |
| 372. | |
| 373. | |
| 374. | |
| 375. | |
| 376. | |
| 377. | |
| 378. | |
| 379. | |
| 380. | |
| 381. | |
| 382. | |
| 383. | |
| 384. | |
| 385. | |
| 386. | |
| 387. | |
| 388. | |
| 389. | |
| 390. | |
| 391. | |
| 392. | |
| 393. | |
| 394. | |
| 395. | |

| | |
|---|---|
| 396. | |
| 397. | |
| 398. | |
| 399. | |
| 400. | |
| 401. | |
| 402. | |
| 403. | |
| 404. | |
| 405. | |
| 406. | |
| 407. | |
| 408. | |
| 409. | |
| 410. | |
| 411. | |
| 412. | |
| 413. | |
| 414. | |
| 415. | |
| 416. | |
| 417. | |
| 418. | |
| 419. | |
| 420. | |
| 421. | |
| 422. | |
| 423. | |
| 424. | |
| 425. | |
| 426. | |
| 427. | |
| 428. | |
| 429. | |
| 430. | |
| 431. | |

| 432. | |
|------|--|
| 433. | |
| 434. | |
| 435. | |
| 436. | |
| 437. | |
| 438. | |
| 439. | |
| 440. | |
| 441. | |
| 442. | |
| 443. | |
| 444. | |
| 445. | |
| 446. | |
| 447. | |
| 448. | |
| 449. | |
| 450. | |
| 451. | |
| 452. | |
| 453. | |
| 454. | |
| 455. | |
| 456. | |
| 457. | |
| 458. | |
| 459. | |
| 460. | |
| 461. | |
| 462. | |
| 463. | |
| 464. | |
| 465. | |
| 466. | |
| 467. | |

| | |
|---|---|
| 468. | |
| 469. | |
| 470. | |
| 471. | |
| 472. | |
| 473. | |
| 474. | |
| 475. | |
| 476. | |
| 477. | |
| 478. | |
| 479. | |
| 480. | |
| 481. | |
| 482. | |
| 483. | |
| 484. | |
| 485. | |
| 486. | |
| 487. | |
| 488. | |
| 489. | |
| 490. | |
| 491. | |
| 492. | |
| 493. | |
| 494. | |
| 495. | |
| 496. | |
| 497. | |
| 498. | |
| 499. | |
| 500. | 2012 Letter from Nike, Inc. with handwritten notes |
| 501. | College Park Police Department Incident Report for Abu Barrie  dated 2/14/13 |

| 502. | College Park Police Department Incident Report for Minkaily Kuyateh dated 2/14/13 |
|------|------------------------------------------------------------------------------------|
| 503. | Certified copy of court file re: The State of Georgia v. Tunkara Muhamadou, Case No. 09CP90477 |
| 504. | Certified copy of court file re: The State of Georgia v. Mamadou Oury Diallo, Case No. 10SC92756 |
| 505. | Certified copy of court file re: The State of Georgia v. Sidi Koita, Case No. 14SC131231 |
| 506. | Certified copy of court file re: The State of Georgia v. Thierno Bah, Case No. 14SC131231 |
| 507. | Certified copy of court file re: The State of Georgia v. Mama Dukureh, Case No. 14SC131231 |
| 508. | Certified copy of court file re: The State of Georgia v. Martin Owens, Case No. 14SC131231 |
| 509. | Certified copy of court file re: The State of Georgia v. Haji Sonna, Case No. 14SC131231 |
| 510. | Certified copy of court file re: The State of Georgia v. Hajie Dukureh, Case No. 146SC146110 |
| 511. | Certified copy of court file re: The State of Georgia v. Abu B Barrie, Case No. 16SC145510 |
| 512. | Certified copy of court file re: The State of Georgia v. Mamadou Diallo, Case No. 16SC14885 |
| 513. | Certified copy of court file re: The State of Georgia v. Hajie Dukureh, Case No. 14SC131231 |
| 514. | Certified copy of court file re: Airport Mini Mall, LLC v. Pape Ndiaye, Case No. 12ED583491 |
| 515. | Certified copy of court file re: Airport Mini Mall, LLC v. Pape Ndiaye, Case No. 12ED583492 |
| 516. | Certified copy of court file re: Airport Mini Mall, LLC v. Pape Ndiaye, Case No. 12ED591883 |
| 517. | Certified copy of court file re Airport Mini Mall, LLC v. Castro Okeyo & Alfred Kenyanya, Case No. 12ED567691 |
| 518. | Certified copy of court file re: Airport Mini Mall, LLC v. Balde Manadou Adama, Case No. 11ED552436 |
| 519. | Certified copy of court file re: Airport Mini Mall, LLC v. Tori Deshaun Simmons, Case No. 15ED000545 |

| 520. | Certified copy of court file re: Airport Mini Mall, LLC v. Bobby Lee Attaberry Jr., Case No. 11ED552438 |
| 521. | Certified copy of court file re: Airport Mini Mall, LLC v. Robert Johnson , Case No. 12ED596042 |
| 522. | Certified copy of case file re: Airport Mini Mall, LLC versus Yoro Bagayoro, Case No. 16ED001624 |
| 523. | Certified copy of court file re: Airport Mini Mall, LLC v. Ousman Ndow, Case No. 14ED012494 |
| 524. | Certified copy of case file re: Airport Mini Mall, LLC v. Ndiaye Squrou Wane Ibrahima, Case No. 12ED583492 |
| 525. | Booth A-2 Fine for Loud Music |
| 526. | Receipt for College Park Police Department Incident Report for Booth W-4B |
| 527. | Receipt for College Park Police Department Incident Report for Booth W-12 |
| 528. | Photographs from Phoenix Report dated 10/16/14 – 11/28/14  (LUXX 000201 – LUXX  000222) |
| 529. | Photographs from Phoenix Report dated 3/25/15 – 4/8/15 (LUXX 000162 – LUXX  000165) |
| 530. | Photographs from Phoenix Report dated 3/25/15 – 4/27/15 (LUXX 000142 – LUXX 000159) |
| 531. | Photograph from Phoenix Report dated 9/29/15 – 10/19/15( LUXX 000228) |
| 532. | Photographs from Phoenix Report dated 7/6/16 – 8/12/16 (LUXX 001611 – LUXX 001614) |
| 533. | Photographs LUXX 000081 – LUXX 000132 |
| 534. | Photographs LUXX 000233 – LUXX 000235 |
| 535. | Phoenix Consulting & Investigations Inc. Investigative Report for 10/16/14 – 11/28/14 |
| 536. | Phoenix Consulting & Investigations Inc. Investigative Report for 3/25/15 – 4/8/15 |
| 537. | Phoenix Consulting & Investigations Inc. Investigative Report for 3/25/15 – 4/27/15 |
| 538. | Phoenix Consulting & Investigations Inc. Investigative Report for 9/29/15 – 10/19/15 |
| 539. | Phoenix Consulting & Investigations Inc. Investigative Report for 7/6/16 – 8/12/16 |

| 540. | Phoenix Consulting & Investigations Inc. Invoice #531 dated 4/14/15 |
|---|---|
| 541. | Phoenix Consulting & Investigations Inc. Invoice #532 dated 5/28/15 |
| 542. | Phoenix Consulting & Investigations Inc. Invoice #531 dated 10/21/15 |
| 543. | Phoenix Consulting & Investigations Inc. Invoice #464 dated 12/5/14 |
| 544. | List of raids and investigations |
| 545. | Letter dated December 9, 2014 from Luxottica to Old National Discount Mall |
| 546. | Letter dated April 22, 2015 from Luxottica to Old National Discount Mall  with Handwritten Notes |
| 547. | Letter dated December 23, 2014 from Louis Vutton to Jerome Yeh |
| 548. | Letter dated December 30, 2014 from Coach to Old National Discount Mall |
| 549. | Email dated April 16, 2015 from Geanie Johansen to John Stewart and Jason Groppe re: Old National Discount Mall |
| 550. | Letter dated April 22, 2015 from Luxottica to Old National Discount Mall |
| 551. | |
| 552. | |
| 553. | |
| 554. | |
| 555. | |
| 556. | |
| 557. | |
| 558. | |
| 559. | |
| 560. | |
| 561. | |
| 562. | |
| 563. | |
| 564. | |
| 565. | |
| 566. | |
| 567. | |
| 568. | |
| 569. | |
| 570. | |

| | |
|---|---|
| 571. | |
| 572. | |
| 573. | |
| 574. | |
| 575. | |
| 576. | |
| 577. | |
| 578. | |
| 579. | |
| 580. | |
| 581. | |
| 582. | |
| 583. | |
| 584. | |
| 585. | |
| 586. | |
| 587. | |
| 588. | |
| 589. | |
| 590. | |
| 591. | |
| 592. | |
| 593. | |
| 594. | |
| 595. | |
| 596. | |
| 597. | |
| 598. | |
| 599. | |
| 600. | Certified Trademark Registration Certificate No. 650,499 for Ray-Ban |
| 601. | Certified Trademark Registration Certificate No. 1,080,886 for Ray-Ban |
| 602. | Certified Trademark Registration Certificate No. 1,093,658 for Ray-Ban |

| 603. | Certified Trademark Registration Certificate No. 1,320,460 for Ray-Ban |
|------|------------------------------------------------------------------------|
| 604. | Certified Trademark Registration Certificate No. 1,726,955 for Ray-Ban |
| 605. | Certified Trademark Registration Certificate No. 3,522,603 for Ray-Ban |
| 606. | Certified Trademark Registration Certificate No. 1,519,596 for Oakley |
| 607. | Certified Trademark Registration Certificate No. 1,521,599 for Oakley |
| 608. | Certified Trademark Registration Certificate No. 1,552,583 for Oakley |
| 609. | Certified Trademark Registration Certificate No. 1,902,660 for Oakley |
| 610. | Certified Trademark Registration Certificate No. 1,904,181 for Oakley |
| 611. | Certified Trademark Registration Certificate No.1,908,414 for Oakley |
| 612. | Certified Trademark Registration Certificate No. 1,927,106 for Oakley |
| 613. | Certified Trademark Registration Certificate No. 1,980,039 for Oakley |
| 614. | Certified Trademark Registration Certificate No. 1,984,501 for Oakley |
| 615. | Certified Trademark Registration Certificate No. 1,990,262 for Oakley |
| 616. | Certified Trademark Registration Certificate No. 2,209,416 for Oakley |
| 617. | Certified Trademark Registration Certificate No. 3,143,623 for Oakley |
| 618. | Certified Trademark Registration Certificate No. 3,151,994 for Oakley |
| 619. | Certified Trademark Registration Certificate No. 3,153,943 for Oakley |
| 620. | Certified Trademark Registration Certificate No. 3,331,124 for Oakley |

| 621. | Certified Trademark Registration Certificate No. 3,496,633 for Oakley |
|------|-----------------------------------------------------------------------|
| 622. | Certified Trademark Registration Certificate No. 3,785,868 for Oakley |
| 623. | Trademark Assignment for Luxottica Group, S.p.A. |
| 624. | Summary exhibit of trademark violations for Ray-Ban frames for sunglasses and eyeglasses |
| 625. | Summary exhibit of trademark violations for Ray-Ban lenses |
| 626. | Summary exhibit of trademark violations for Ray-Ban carrying cases |
| 627. | Summary exhibit of trademark violations for Ray-Ban cleaning cloths |
| 628. | Summary exhibit of trademark violations for Ray-Ban tags and labels |
| 629. | Summary exhibit of trademark violations for Oakley frames for sunglasses and eyeglasses |
| 630. | Summary exhibit of trademark violations for Oakley lenses |
| 631. | Summary exhibit of trademark violations for Oakley carrying cases |
| 632. | Summary exhibit of trademark violations for Oakley tags and labels |
| 633. | Exemplar product – black Ray-Ban Clubmaster sunglasses with black case |
| 634. | Exemplar product – black Ray-Ban New Wayfarer sunglasses with black case |
| 635. | Exemplar product – black Ray-Ban Wayfarer sunglasses with brown case |
| 636. | Exemplar product – gold tortoise, brown polarized Ray-Ban  Polarized Aviator with brown case |
| 637. | Exemplar product – blue gray Ray-Ban eyeglasses with black case |
| 638. | Exemplar product – black, blue polarized Oakley Fuel Cell sunglasses with black case |
| 639. | Exemplar product – black, polarized Oakley sunglasses with black case |
| 640. | Evidence bag of samples seized on November 21, 2014 -  11 Counterfeit Ray-Ban and Oakley frames |
| 641. | Evidence bag of samples seized on November 21, 2014 -  9 Counterfeit Ray-Ban cases |
| 642. | Evidence bag of samples seized on November 21, 2014 -  5 Counterfeit Ray-Ban cases, 1 Ray-Ban cleaning cloth and 1 Ray-Ban label |
| 643. | Evidence bag of samples seized on November 21, 2014 -  4 Counterfeit Oakley frames |

| 644. | Evidence bag of samples seized on November 21, 2014 - 1 Counterfeit Oakley frames and 6 Counterfeit Oakley cases |
|------|------------------------------------------------------------------|
| 645. | Evidence bag of samples seized on March 26, 2015 – 1 Counterfeit Ray-Ban frame |
| 646. | Evidence bag of samples seized on March 30, 2015 – 4 Counterfeit Ray-Ban frames |
| 647. | Evidence bag of samples seized on April 23, 2015 – 4 Counterfeit Ray-Ban frames |
| 648. | Evidence bag of samples seized on October 12, 2015 – 1 Counterfeit Ray-Ban frame |
| 649. | Evidence bag of samples seized on August 8, 2016 – 9 Counterfeit Ray-Ban cases |
| 650. | Evidence bag of samples seized on August 8, 2016 – 6 Counterfeit Ray-Ban frames |
| 651. | Evidence bag of samples seized on August 8, 2016 – 12 Counterfeit Ray-Ban frames |
| 652. | Evidence bag of samples seized on August 8, 2016 – 5 Counterfeit Ray-Ban cases |
| 653. | Evidence bag of samples seized on August 8, 2016 – 10 Counterfeit Ray-Ban cases |
| 654. | Evidence bag of samples seized on August 8, 2016 – 3 Counterfeit Ray-Ban cases |
| 655. | Evidence bag of samples seized on August 8, 2016 – 4 Counterfeit Ray-Ban cases |
| 656. | Composite photographs from March 5, 2013 seizure |
| 657. | Composite photographs from November 21, 2014 seizure |
| 658. | Composite photographs from March 26, 2015 purchases |
| 659. | Composite photographs from March 30, 2015 purchases |
| 660. | Composite photographs from April 23, 2015 purchases |
| 661. | Composite photographs from October 12, 2015 purchases |
| 662. | Composite photographs from August 8, 2016 seizure |
| 663. | Certified Trademark Registration Certificate No. 1,356,297 for Oakley |
| 664. | Evidence bag of samples seized on August 8, 2016 – 7 Counterfeit Ray-Ban cases |
| 665. | YouTube Video "Discount Mall Top Ten #1 (Topflight Tom)" |

| | |
|---|---|
| 666. | YouTube Video "Drunk Lady at Old Discount Mall" |
| 667. | YouTube Video "Encounters with Ignorance #4" |
| 668. | YouTube Video "Your Mother's An Asshole" |
| 669. | |
| 670. | |
| 671. | |
| 672. | |
| 673. | |
| 674. | |
| 675. | |
| 676. | |
| 677. | |
| 678. | |
| 679. | |
| 680. | |
| 681. | |
| 682. | |
| 683. | |
| 684. | |
| 685. | |
| 686. | |
| 687. | |
| 688. | |
| 689. | |
| 690. | |
| 691. | |
| 692. | |
| 693. | |
| 694. | |
| 695. | |
| 696. | |
| 697. | |
| 698. | |
| 699. | |
| 700. | Video Deposition and Transcript of Gregory J. Dickerson |

| 701. | Video Deposition and Transcript of Gregory J. Dickerson for Airport Mini Mall, LLC |
|------|-------------------------------------------------------------------------------------|
| 702. | Video Deposition and Transcript of Jerome Yeh |
| 703. | Video Deposition and Transcript of Donald L. Yeh |
| 704. | Video Deposition and Transcript of Alice Jamison for Yes Assets, LLC |
| 705. | Video Deposition and Transcript of Steven Chen, CPA |
| 706. | |
| 707. | |
| 708. | |
| 709. | |
| 710. | |
| 711. | |
| 712. | |
| 713. | |
| 714. | |
| 715. | |
| 716. | |
| 717. | |
| 718. | |
| 719. | |
| 720. | |
| 721. | |
| 722. | |
| 723. | |
| 724. | |
| 725. | |
| 726. | |
| 727. | |
| 728. | |
| 729. | |
| 730. | |
| 731. | |
| 732. | |
| 733. | |
| 734. | |
| 735. | |

| 736. | |
|------|--|
| 737. | |
| 738. | |
| 739. | |
| 740. | |
| 741. | |
| 742. | |
| 743. | |
| 744. | |
| 745. | |
| 746. | |
| 747. | |
| 748. | |
| 749. | |
| 750. | |
| 751. | |
| 752. | |
| 753. | |
| 754. | |
| 755. | |
| 756. | |
| 757. | |
| 758. | |
| 759. | |
| 760. | |
| 761. | |
| 762. | |
| 763. | |
| 764. | |
| 765. | |
| 766. | |
| 767. | |
| 768. | |
| 769. | |
| 770. | |
| 771. | |

| | |
|---|---|
| 772. | |
| 773. | |
| 774. | |
| 775. | |
| 776. | |
| 777. | |
| 778. | |
| 779. | |
| 780. | |
| 781. | |
| 782. | |
| 783. | |
| 784. | |
| 785. | |
| 786. | |
| 787. | |
| 788. | |
| 789. | |
| 790. | |
| 791. | |
| 792. | |
| 793. | |
| 794. | |
| 795. | |
| 796. | |
| 797. | |
| 798. | |
| 799. | |
| 800. | All Interrogatories, Answers to Interrogatories, Requests for Production, Responses to Requests for Production, Requests for Admissions and Responses to Requests for Admissions in this action |
| 801. | All documents produced during discovery of this case |
| 802. | All exhibits listed by any other party, unless an objection has been made by Plaintiffs |
| 803. | All applicable case law, statutes, ordinances, regulations and such other legal treatises |

| 804. | All demonstrative aids and exhibits |
|------|-------------------------------------|
| 805. | All impeachment and rebuttal exhibits |
| 806. | Affidavit of Geanie L. Johansen |
| 807. | Defendants' Initial Disclosures |
| 808. | Affidavit of Gregory J. Dickerson |
| 809. | Non-Party Subpoena Duces Tecum Without Deposition Directed to Wells Fargo Bank |
| 810. | Non-Party Subpoena Duces Tecum Without Deposition Directed to City Clerk of College Park with documents (Affidavit of Records Custodian and COLLEGE PARK 000001 – COLLEGE PARK 000305) |
| 811. | |
| 812. | |
| 813. | |
| 814. | |
| 815. | |
| 816. | |
| 817. | |
| 818. | |
| 819. | |
| 820. | |
| 821. | |
| 822. | |
| 823. | |
| 824. | |
| 825. | |
| 826. | |
| 827. | |
| 828. | |
| 829. | |
| 830. | |
| 831. | |
| 832. | |
| 833. | |
| 834. | |
| 835. | |
| 836. | |

| | |
|---|---|
| 837. | |
| 838. | |
| 839. | |
| 840. | |
| 841. | |
| 842. | |
| 843. | |
| 844. | |
| 845. | |
| 846. | |
| 847. | |
| 848. | |
| 849. | |

Plaintiffs reserve the right to use any exhibit listed herein in an enlarged format for presentation to the jury.   In addition, Plaintiffs reserve the right to compile information from a collection of exhibits into an enlarged combined exhibit for presentation to the jury.  Plaintiffs reserve the right to use additional exhibits purely for impeachment as opposed to admission.

**Defendants' objections to Plaintiffs' trial exhibits:**

| Exhibit | Defendants' Objection(s) |
|---|---|
| 1 | Relevance |
| 2 | Relevance |
| 3 | Relevance |
| 4 | Relevance |
| 5 | Relevance |
| 6 | Relevance |
| 7 | Relevance |
| 8 | Relevance |
| 9 | Relevance |
| 10 | Relevance |
| 11 | Relevance |
| 12 | Relevance |
| 13 | Relevance |
| 14 | Relevance |
| 15 | Relevance |
| 16 | Relevance |
| 17 | Relevance |
| 18 | Relevance |
| 19 | Relevance |
| 22 | Relevance |
| 23 | Relevance |
| 24 | Relevance |
| 25 | Relevance, Hearsay, Hearsay Within Hearsay |
| 100 | Relevance |
| 101 | Relevance |
| 102 | Relevance |
| 103 | Relevance |
| 104 | Relevance |
| 105 | Relevance |
| 106 | Relevance |
| 107 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 108 | Relevance, Prejudice to the extent this evidence references the financial |

| | wherewithal/financial resources of any Defendant |
|---|---|
| 109 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 110 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 111 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 112 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 113 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 114 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 115 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 116 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 117 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 118 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 119 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 120 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 121 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 122 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 123 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 124 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 125 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 126 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |

| 127 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 128 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 129 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 130 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 131 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 132 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 133 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 134 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 135 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 136 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 137 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 138 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 139 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 140 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 141 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 142 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 143 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 144 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 145 | Relevance, Prejudice to the extent this evidence references the financial |

| | |
|---|---|
| | wherewithal/financial resources of any Defendant |
| 146 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 147 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 148 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 149 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 150 | |
| 151 | |
| 152 | |
| 153 | Relevance |
| 154 | Relevance |
| 155 | Relevance |
| 156 | Relevance |
| 157 | Relevance |
| 158 | Relevance |
| 159 | Relevance |
| 160 | Relevance |
| 161 | Relevance |
| 162 | Relevance |
| 163 | Relevance |
| 164 | Relevance |
| 165 | Relevance |
| 166 | Relevance |
| 167 | Relevance |
| 168 | Relevance |
| 169 | Relevance |
| 170 | Relevance |
| 171 | Relevance |
| 172 | Relevance |
| 173 | Relevance |
| 174 | Relevance |
| 175 | Relevance |
| 176 | Relevance |

| 177 | Relevance |
|-----|-----------|
| 178 | Relevance |
| 179 | Relevance |
| 180 | Relevance |
| 181 | Relevance |
| 182 | Relevance |
| 183 | Relevance |
| 184 | Relevance |
| 185 | Relevance |
| 186 | Relevance |
| 187 | Relevance |
| 188 | Relevance |
| 189 | Relevance |
| 190 | Relevance |
| 191 | Relevance |
| 192 | Relevance |
| 193 | Relevance |
| 194 | Relevance |
| 195 | Relevance |
| 196 | Relevance |
| 197 | Relevance |
| 198 | Relevance |
| 199 | Relevance |
| 200 | Relevance |
| 201 | Relevance |
| 202 | Relevance |
| 203 | Relevance |
| 204 | Relevance |
| 205 | Relevance |
| 206 | Relevance |
| 207 | Relevance |
| 208 | Relevance |
| 209 | Relevance |
| 210 | Relevance |
| 211 | Relevance |
| 212 | Relevance |

| 213 | Relevance |
| 214 | Relevance |
| 215 | Relevance |
| 216 | Relevance |
| 217 | Relevance |
| 218 | Relevance |
| 219 | Relevance |
| 220 | Relevance |
| 221 | Relevance |
| 222 | Relevance |
| 223 | Relevance |
| 224 | Relevance |
| 225 | Relevance |
| 226 | Relevance |
| 227 | Relevance |
| 228 | Relevance |
| 229 | Relevance |
| 230 | Relevance |
| 231 | Relevance |
| 232 | |
| 233 | |
| 234 | |
| 235 | Relevance |
| 236 | Relevance |
| 237 | Relevance |
| 238 | Relevance |
| 239 | Relevance |
| 240 | Relevance |
| 241 | Relevance |
| 242 | Relevance |
| 243 | Relevance |
| 244 | Relevance |
| 245 | Relevance |
| 246 | Relevance |
| 247 | Relevance |
| 248 | Relevance |

| 249 | Relevance |
| --- | --- |
| 250 | Relevance |
| 251 | Relevance |
| 252 | Relevance |
| 253 | Relevance |
| 254 | Relevance |
| 255 | Relevance |
| 256 | Relevance |
| 257 | Relevance |
| 258 | Relevance |
| 259 | Relevance |
| 260 | Relevance |
| 261 | Relevance |
| 262 | Relevance |
| 263 | Relevance |
| 264 | Relevance |
| 265 | Relevance |
| 266 | Relevance |
| 267 | Relevance |
| 268 | Relevance |
| 269 | Relevance |
| 270 | Relevance |
| 271 | Relevance |
| 272 | Relevance |
| 273 | Relevance |
| 274 | Relevance |
| 275 | Relevance |
| 276 | Relevance |
| 277 | Relevance |
| 278 | Relevance |
| 279 | Relevance |
| 280 | Relevance |
| 281 | Relevance |
| 282 | Relevance |
| 283 | Relevance |
| 284 | Relevance |

| 285 | Relevance |
|-----|-----------|
| 286 | Relevance |
| 287 | Relevance |
| 288 | Relevance |
| 289 | Relevance |
| 290 | Relevance |
| 291 | Relevance |
| 292 | Relevance |
| 293 | Relevance |
| 294 | Relevance |
| 295 | Relevance |
| 296 | Relevance |
| 297 | Relevance |
| 298 | Relevance |
| 299 | Relevance |
| 300 | Relevance |
| 301 | Relevance |
| 302 | Relevance |
| 303 | Relevance |
| 304 | Relevance |
| 305 | Relevance |
| 306 | Relevance |
| 307 | Relevance |
| 308 | Relevance |
| 309 | Relevance |
| 310 | Relevance |
| 311 | Relevance |
| 312 | Relevance |
| 313 | Relevance |
| 314 | Relevance |
| 315 | Relevance |
| 316 | Relevance |
| 317 | Relevance |
| 318 | Relevance |
| 319 | Relevance |
| 320 | Relevance |

| | |
|---|---|
| 321 | Relevance |
| 322 | Relevance |
| 323 | Relevance |
| 324 | Relevance |
| 325 | Relevance |
| 326 | Relevance |
| 327 | Relevance |
| 328 | Relevance |
| 329 | Relevance |
| 330 | Relevance |
| 331 | Relevance |
| 332 | Relevance |
| 333 | Relevance |
| 334 | Relevance |
| 335 | Relevance |
| 336 | Relevance |
| 337 | Relevance |
| 338 | Relevance |
| 339 | Relevance |
| 340 | Relevance |
| 341 | Relevance |
| 500 | Relevance, Prejudice as to any references to items not bearing Plaintiffs' trademarks |
| 501 | Relevance, Hearsay |
| 502 | Relevance, Hearsay |
| 503 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 504 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 505 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 506 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 507 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 508 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 509 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 510 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 511 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 512 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 513 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |

| 514 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
|---|---|
| 515 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 516 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 517 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 518 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 519 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 520 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 521 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 522 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 523 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 524 | Relevance, Hearsay, Authenticity/Incomplete (not certified) |
| 525 | Relevance |
| 526 | Relevance |
| 527 | Relevance |
| 528 | Relevance, Prejudice as to any photographs of items not bearing Plaintiffs' trademarks |
| 529 | Relevance, Prejudice as to any photographs of items not bearing Plaintiffs' trademarks |
| 530 | Relevance, Prejudice as to any photographs of items not bearing Plaintiffs' trademarks |
| 531 | Relevance, Prejudice as to any photographs of items not bearing Plaintiffs' trademarks |
| 532 | Relevance, Prejudice as to any photographs of items not bearing Plaintiffs' trademarks |
| 533 | Relevance, Prejudice as to any photographs of items not bearing Plaintiffs' trademarks |
| 534 | Relevance, Prejudice as to any photographs of items not bearing Plaintiffs' trademarks |
| 535 | Relevance, Prejudice as to any references to items not bearing Plaintiffs' trademarks |
| 536 | Relevance, Prejudice as to any references to items not bearing Plaintiffs' trademarks |
| 537 | Relevance, Prejudice as to any references to items not bearing Plaintiffs' trademarks |
| 538 | Relevance, Prejudice as to any references to items not bearing Plaintiffs' trademarks |
| 539 | Relevance, Prejudice as to any references to items not bearing Plaintiffs' |

| | trademarks |
|---|---|
| 540 | |
| 541 | |
| 542 | |
| 543 | |
| 544 | |
| 545 | |
| 546 | |
| 547 | Relevance, Prejudice as to any references to items not bearing Plaintiffs' trademarks |
| 548 | Relevance, Prejudice as to any references to items not bearing Plaintiffs' trademarks |
| 549 | |
| 550 | |
| 600 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 601 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 602 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 603 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 604 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 605 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 606 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 607 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 608 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 609 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 610 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 611 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 612 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 613 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 614 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 615 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 616 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 617 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 618 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 619 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 620 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 621 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |

| 622 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
|---|---|
| 623 | |
| 624 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 625 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 626 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 627 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 628 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 629 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 630 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 631 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 632 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 633 | Relevance |
| 634 | Relevance |
| 635 | Relevance |
| 636 | Relevance |
| 637 | Relevance |
| 638 | Relevance |
| 639 | Relevance |
| 640 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 641 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 642 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 643 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 644 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 645 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 646 | Relevance as to any items not seized from tenants of the International |

| | |
|---|---|
| | Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 647 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 648 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 649 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 650 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 651 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 652 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 653 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 654 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 655 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 656 | Relevance |
| 657 | Relevance as to photos of any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 658 | Relevance as to photos of any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 659 | Relevance as to photos of any items not seized from tenants of the |

| | |
|---|---|
| | International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 660 | Relevance as to photos of any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 661 | Relevance as to photos of any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 662 | Relevance as to photos of any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 663 | Relevance, Prejudice as to any trademark not implicated by this lawsuit |
| 664 | Relevance as to any items not seized from tenants of the International Discount Mall or any items not offered for sale by tenants of the International Discount Mall |
| 665 | Relevance, Hearsay |
| 666 | Relevance, Hearsay |
| 667 | Relevance, Hearsay |
| 668 | Relevance, Hearsay |
| 700 | Relevance as to the video or transcript of any witness who is available for trial |
| 701 | Relevance as to the video or transcript of any witness who is available for trial |
| 702 | Relevance as to the video or transcript of any witness who is available for trial |
| 703 | Relevance as to the video or transcript of any witness who is available for trial |
| 704 | Relevance as to the video or transcript of any witness who is available for trial |
| 705 | Relevance as to the video or transcript of any witness who is available for trial |
| 800 | In view of the breadth of the items listed in this exhibit, Defendants must reserve objections until Plaintiffs offer any of the listed items into evidence |
| 801 | In view of the breadth of the items listed in this exhibit, Defendants must reserve objections until Plaintiffs offer any of the listed items into evidence |

| 802 | In view of the breadth of the items listed in this exhibit, Defendants must reserve objections until Plaintiffs offer any of the listed items into evidence |
| --- | --- |
| 803 | Relevance |
| 804 | In view of the breadth of the items listed in this exhibit, Defendants must reserve objections until Plaintiffs offer any of the listed items into evidence |
| 805 | In view of the breadth of the items listed in this exhibit, Defendants must reserve objections until Plaintiffs offer any of the listed items into evidence |
| 806 | Hearsay to the extent Geanie Johansen does not testify at trial |
| 807 | In view of the breadth of information contained in Defendants' Initial Disclosures, Defendants must reserve objections until Plaintiffs offer portions of the Disclosures into evidence |
| 808 | |
| 809 | Relevance |
| 810 | Relevance, Hearsay |

**Defendants intend to file motions *in limine* in accordance with the Court's Standing Order in order to more completely present the objections noted above.**

# ATTACHMENT G-2

## **DEFENDANTS' LIST OF DOCUMENTS**

| Exhibit | Description |
|---------|-------------|
| D1 | Letter from Luxottica to Old National Discount Mall dated 12/9/2014 |
| D2 | Letter from Luxottica to Old National Discount Mall dated 4/22/2015 |
| D3 | Phoenix Consulting Investigative Report for 10/16/2014 – 11/28/2014 |
| D4 | Phoenix Consulting Investigative Report for 3/25/2015 – 4/8/2015 |
| D5 | Phoenix Consulting Investigative Report for 3/25/2015 – 4/27/2015 |
| D6 | Phoenix Consulting Investigative Report for 9/29/2015 – 10/19/2015 |
| D7 | Phoenix Consulting Investigative Report for 7/6/2016 – 8/12/2016 |
| D8 | Phoenix Consulting Invoice #464 dated 12/5/2014 |
| D9 | Phoenix Consulting Invoice #531 dated 4/14/2015 |
| D10 | Phoenix Consulting Invoice #532 dated 5/28/2015 |
| D11 | Phoenix Consulting Invoice #531 dated 10/21/2015 |
| D12 | 3/12/2015 and 3/14/2015 Email exchange between Geanie Johansen, John Stewart, and Jason Groppe |
| D13 | 4/16/2015 Email from Geanie Johansen to John Stewart and Jason Groppe |
| D14 | 11/13/2014 Affidavits of Geanie Johansen |
| D15 | 3/17/2015 Emails exchanged among Richard Dobson,  John Stewart, and  Troy Holub, and  3/26/15 Email from Nick Thames to John Stewart, Richard Dobson, and Troy Holub |
| D16 | Isabel Rozo list of visits to International Discount Mall |
| D17 | Operating Agreement, Certificate of Organization, and Articles of Organization for Yes Assets, LLC |
| D18 | Operating Agreement, Certificate of Organization, and Articles of Organization for Airport Mini Mall, LLC |
| D19 | Shopping Center Lease Agreement between Yes Assets, LLC and Airport Mini Mall, LLC |
| D20 | Map/Layout of store premises within International Discount Mall |
| D21 | Correspondence to International Discount Mall vendors regarding new 2015 lease information and items offered for sale |
| D22 | Correspondence to International Discount Mall vendors regarding new 2015 lease information and wholesaling prohibited |
| D23 | Correspondence to International Discount Mall vendors regarding 2015 |

| | lease terms, wholesaling prohibited, manufacturing goods prohibited, non-authentic merchandise prohibited |
|---|---|
| D24 | Correspondence to International Discount Mall vendors regarding 2014 lease terms, wholesaling prohibited, manufacturing goods prohibited, illegal merchandise prohibited |
| D25 | Letter from Luxottica to Old National Discount Mall dated 4/22/2015 with Greg Dickerson's handwritten notes |
| D26 | 2015 exemplar lease form |
| D27 | Emails exchanged between Marvin Dikeman and David Rosemberg between 10/26/2015 and 11/6/2015 |
| D28 | 3/14/2016 Declaration of Jason Groppe Pursuant to 28 U.S.C. § 1746 |
| D29 | 3/14/2016 Declaration of Geanie Johansen Pursuant to 28 U.S.C. § 1746 |
| D30 | 3/14/2016 Declaration of Troy Holub Pursuant to 28 U.S.C. § 1746 |
| D31 | 3/14/2016 Declaration of Isabel Rozo Pursuant to 28 U.S.C. § 1746 |
| D32 | 3/14/2016 Declaration of Timothy Forman |
| D33 | Emails exchanged between defense counsel and Timothy Forman between 12/30/2015 and 1/8/2016 |
| D34 | 3/1/16 Motion to Quash Subpoena and related filings in Fulton Magistrate Court concerning Isabel Rozo |
| D35 | 3/1/16 Motion to Quash Subpoena and related filings in Fulton Magistrate concerning Geanie Johansen |
| D36 | Sign posted at International Discount Mall |

**A number of Defendants' exhibits listed above, which were produced in discovery by Plaintiffs, contain objectionable material. Defendants anticipate filing motions *in limine* concerning these exhibits prior to trial in accordance with the Court's Standing Order.**

**<u>Plaintiffs' Objections to Defendants' Exhibits</u>:**

Plaintiffs object that Defendants' Exhibit No. 3 is hearsay and it is not the original copy of the document that was produced by Plaintiffs. The original copy contained color photographs.  Defendants' Exhibit No. 3 contains grainy black and white photographs.

Plaintiffs object that Defendants' Exhibit No. 4 is hearsay and it is not the original copy of the document that was produced by Plaintiffs. The original copy contained color photographs.  Defendants' Exhibit No. 4 contains grainy black and white photographs.

Plaintiffs object that Defendants' Exhibit No. 5 is hearsay and it is not the original copy of the document that was produced by Plaintiffs. The original copy contained color photographs.  Defendants' Exhibit No. 5 contains grainy black and white photographs.

Plaintiffs object that Defendants' Exhibit No. 6 is hearsay and it is not the original copy of the document that was produced by Plaintiffs. The original copy contained color photographs.  Defendants' Exhibit No. 6 contains grainy black and white photographs.

Plaintiffs object that Defendants' Exhibit No. 7 is hearsay and it is not the original copy of the document that was produced by Plaintiffs. The original copy contained color photographs.  Defendants' Exhibit No. 7 contains grainy black and white photographs.

Plaintiffs object that Defendants' Exhibit No. 8 is hearsay.

Plaintiffs object that Defendants' Exhibit No. 9 is hearsay.

Plaintiffs object that Defendants' Exhibit No. 10 is hearsay.

Plaintiffs object that Defendants' Exhibit No. 11 is hearsay.

Plaintiffs object that Defendants' Exhibit No. 12 is hearsay.

Plaintiffs object that Defendants' Exhibit No. 13 is hearsay.

Plaintiffs' object that Defendants' Exhibit No. 14 is hearsay.

Plaintiffs' object that Defendants' Exhibit No. 15 is hearsay.

Plaintiffs object that Defendants' Exhibit No. 16 is hearsay.

Plaintiffs' object that Defendants' Exhibit No.17 is hearsay.

Plaintiffs' object that Defendants' Exhibit No. 18 is hearsay.

Plaintiffs' object that Defendants' Exhibit No. 19 is hearsay.

Plaintiffs' object that Defendants' Exhibit No. 21 is hearsay.

Plaintiffs' object that Defendants' Exhibit No. 22 is hearsay.

Plaintiffs' object that Defendants' Exhibit No. 23 is hearsay.

Plaintiffs' object that Defendants' Exhibit No. 24 is hearsay.

Plaintiffs object that Defendants' Exhibit No. 26 is irrelevant, incomplete and hearsay.

Plaintiffs object that Defendants' Exhibit No. 27 is hearsay, irrelevant, immaterial and prejudicial.

Plaintiffs' object that Defendants' Exhibit No. 29 is hearsay.

Plaintiffs' object that Defendants' Exhibit No. 30 is hearsay.

Plaintiffs' object that Defendants' Exhibit No. 31 is hearsay.

Plaintiffs' object that Defendants' Exhibit No. 32 is hearsay.

Plaintiffs' object that Defendants' Exhibit No. 33 is irrelevant and hearsay.

Plaintiffs' object that Defendants' Exhibit No. 34 is irrelevant, prejudicial and hearsay.

Plaintiffs' object that Defendants' Exhibit No. 35 is irrelevant, prejudicial and hearsay.

Plaintiffs' object that Defendants' Exhibit No. 36 is not authentic and constitutes hearsay.

## ATTACHMENT H-1

## <u>PLAINTIFFS' TRIAL BRIEF</u>

Plaintiffs may file trial briefs prior to trial in accordance with the Court's rules.

## ATTACHMENT H-2

## **DEFENDANTS' TRIAL BRIEF**

Defendants may file trial briefs prior to trial in accordance with the Court's rules.

**ATTACHMENT I-1**

## PLAINTIFFS' PROPOSED JURY VERDICT FORM

We the jury in the above-captioned action, find the following special verdict

on the following questions submitted to us:

## **Contributory Trademark Infringement**

### **Question No. 1: Frames for Sunglasses or Eyeglasses**

Do you find that any of the vendors at the Old National Discount Mall sold, offered for sale, or distributed <u>frames</u> for sunglasses or eyeglasses bearing counterfeits of Luxottica's Trademarks?

_____YES                 _____NO

If you answered "Yes", then proceed to Question 2.  If you answered "No", then proceed to Question 3.

### **Question No. 2: Frames for Sunglasses or Eyeglasses**

Which of following trademarks, if any, do you find were counterfeited on the <u>frames</u> for sunglasses or eyeglasses that were sold, offered for sale, or distributed by vendors at the Old National Discount Mall?  Please place a check mark next to the trademark(s) at issue:

| 1,093,658<br><br>EXHIBIT - | RAY-BAN script logo | |
|---|---|---|

132

**Question No. 3: Sunglass or Eyeglass Lenses**

Do you find that any of the vendors at the Old National Discount Mall sold, offered for sale, or distributed sunglass or eyeglass lenses bearing counterfeits of Luxottica's Ray-Ban Trademarks?

_____YES                 _____NO

If you answered "Yes", then proceed to Question 4.  If you answered "No", then proceed to Question 5.

**Question No. 4: Sunglass or Eyeglass Lenses**

Which of following trademarks, if any, do you find were counterfeited on the sunglass or eyeglass lenses that were sold, offered for sale, or distributed by vendors at the Old National Discount Mall?  Please place a check mark next to the trademark(s) at issue:

| 650,499<br><br>EXHIBIT - | RAY-BAN script logo | |
|---|---|---|

**Question No. 5: Carrying Cases**

Do you find that any of the vendors at the Old National Discount Mall sold, offered for sale, or distributed <u>carrying cases</u> bearing counterfeits of Luxottica's Trademarks?

_____YES                 _____NO

If you answered "Yes", then proceed to Question 6.  If you answered "No", then proceed to Question 7.

**Question No. 6: Carrying Cases**

Which of following trademarks, if any, do you find were counterfeited on the <u>carrying cases</u> that were sold, offered for sale, or distributed by vendors at the Old National Discount Mall?  Please place a check mark next to the trademark(s) at issue:

| 1,093,658 EXHIBIT - | RAY-BAN script logo | |
|---|---|---|
| 1,320,460 EXHIBIT - | RAY-BAN in circle logo | |

**Question No. 7: Cleaning Cloths**

Do you find that any of the vendors at the Old National Discount Mall sold, offered for sale, or distributed <u>cleaning cloths</u> bearing counterfeits of Luxottica's Trademarks?

_____YES                    _____NO

If you answered "Yes", then proceed to Question 8.  If you answered "No", then proceed to Question 9.

**Question No. 8: Cleaning Cloths**

Which of following trademarks, if any, do you find were counterfeited on the <u>cleaning cloths</u> that were sold, offered for sale or distributed by vendors at the Old National Discount Mall?  Please place a check mark next to the trademark(s) at issue:

| | | |
|---|---|---|
| 1,726,955<br><br>EXHIBIT - | RAY-BAN script logo | |
| 3,522,603<br><br>EXHIBIT - | RAY-BAN red logo | |

**Question No. 9: Tags/Labels**

Do you find that any of the vendors at the Old National Discount Mall sold, offered for sale, or distributed <u>tags/labels</u> bearing counterfeits of Luxottica's Trademarks?

_____YES                    _____NO

If you answered "Yes", then proceed to Question 10.  If you answered "No", then proceed to Question 11.

**Question No. 10: Tags/Labels**

Which of following trademarks, if any, do you find were counterfeited on the <u>tags/labels</u> that were sold, offered for sale or distributed by vendors at the Old National Discount Mall?  Please place a check mark next to the trademark(s) at issue:

| 1,080,886 EXHIBIT - | RAY-BAN word mark | |
|---|---|---|
| 1,093,658 EXHIBIT - | RAY-BAN script logo | |
| 3,522,603 EXHIBIT - | RAY-BAN red logo | |

**Question No. 11: Frames for Sunglasses or Eyeglasses**

Do you find that any of the vendors at the Old National Discount Mall sold, offered for sale, or distributed <u>frames</u> for sunglasses or eyeglasses bearing counterfeits of Oakley's Trademarks?

_____YES                 _____NO

If you answered "Yes", then proceed to Question 12.  If you answered "No", then proceed to Question 13.

**Question No. 12: Frames for Sunglasses or Eyeglasses**

Which of following trademarks, if any, do you find were counterfeited on the _frames_ for sunglasses or eyeglasses that were sold, offered for sale, or distributed by vendors at the Old National Discount Mall?  Please place a check mark next to the trademark(s) at issue:

| | | |
|---|---|---|
| 3,151,994<br><br>EXHIBIT - | Square O | |
| 1,984,501<br><br>EXHIBIT - | Ellipse | |
| 3,785,868<br><br>EXHIBIT - | Elite Logo | |
| 1,980,039<br><br>EXHIBIT - | Word Mark | |
| 1,356,297<br><br>EXHIBIT - | Word Mark | |

**Question No. 13: Sunglass or Eyeglass Lenses**

Do you find that any of the vendors at the Old National Discount Mall sold, offered for sale, or distributed _sunglass or eyeglass lenses_ bearing counterfeits of Oakley's Trademarks?

_____YES                _____NO

If you answered "Yes", then proceed to Question 14.  If you answered "No", then proceed to Question 15.

**Question No. 14: Sunglass or Eyeglass Lenses**

Which of following trademarks, if any, do you find were counterfeited on the <u>sunglass or eyeglass lenses</u> that were sold, offered for sale, or distributed by vendors at the Old National Discount Mall?  Please place a check mark next to the trademark(s) at issue:

| | | |
|---|---|---|
| 1,990,262<br><br>EXHIBIT - | Oakley (stretched) w/ Ellipse | |
| 1,980,039<br><br>EXHIBIT - | Oakley (stretched) | |
| 1,984,501<br><br>EXHIBIT - | Ellipse | |

**Question No. 15: Carrying Cases**

Do you find that any of the vendors at the Old National Discount Mall sold, offered for sale, or distributed <u>carrying cases</u> bearing counterfeits of Oakley's Trademarks?

_____YES                  _____NO

138

If you answered "Yes", then proceed to Question 16.  If you answered "No", then proceed to Question 17.

**Question No. 16: Carrying Cases**

Which of following trademarks, if any, do you find were counterfeited on the <u>carrying cases</u> that were sold, offered for sale, or distributed by vendors at the Old National Discount Mall?  Please place a check mark next to the trademark(s) at issue:

| | | |
|---|---|---|
| 1,902,660<br><br>EXHIBIT - | Oakley (stretched) w/ Ellipse | |
| 1,908,414<br><br>EXHIBIT - | Word Mark | |

**Question No. 17: Tags / Labels**

Do you find that any of the vendors at the Old National Discount Mall sold, offered for sale, or distributed <u>tags / labels</u> bearing counterfeits of Oakley's Trademarks?

_____YES                _____NO

If you answered "Yes", then proceed to Question 18.  If you answered "No", then proceed to Question 19.

139

**Question No. 18: Tags / Labels**

Which of following trademarks, if any, do you find were counterfeited on the tags / labels that were sold, offered for sale or distributed by vendors at the Old National Discount Mall?  Please place a check mark next to the trademark(s) at issue:

| 1,927,106<br><br>EXHIBIT - | Ellipse | |
| 3,331,124<br><br>EXHIBIT - | Chrome Ellipse |  |
| 1,908,414<br><br>EXHIBIT - | Word Mark | |
| 1,990,262<br><br>EXHIBIT - | Stretched w/ Ellipse | |

**Question No. 19: Contributory Liability, Airport Mini Mall, LLC**

Do you find Defendant Airport Mini Mall, LLC contributorily liable to Luxottica for trademark infringement?

_____YES                 _____NO

If you answered "Yes", then proceed to Question 20.  If you answered "No", then proceed to Question 23.

**Question No.  20: Willful Infringement, Airport Mini Mall, LLC**

Do you find Defendant Airport Mini Mall, LLC's contributory trademark infringement was willful?

_____YES                   _____NO

If you answered "Yes", then proceed to Question 22.  If you answered "No", then proceed to Question 23.

**Question No.  21: Damages for Willful Infringement, Airport Mini Mall, LLC**

If you answered "YES" to question No. 20, you have found Airport Mini Mall, LLC willfully infringed <u>Luxottica's</u> registered trademarks.  You must now determine the amount of damages Airport Mini Mall, LLC must pay per trademark.  You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:     $_____

                                                           x _____ (number of trademarks)

                                                           =_____ total.

**Question No.  22: Damages for Trademark Infringement, Airport Mini Mall, LLC**

If you answered "NO" to question No. 20, you have found Airport Mini Mall, LLC did not willfully infringe <u>Luxottica's</u> registered trademarks.  You must now determine the amount of damages Airport Mini Mall, LLC must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:        $_____

x _____  (number of trademarks)

=_____ total.

**Question No. 23: Contributory Liability, Airport Mini Mall, LLC**

Do you find Defendant Airport Mini Mall, LLC contributorily liable to <u>Oakley</u> for trademark infringement?

_____YES                _____NO

If you answered "Yes", then proceed to Question 24.  If you answered "No", then proceed to Question 27.

**Question No.  24: Willful Infringement, Airport Mini Mall, LLC**

Do you find Defendant Airport Mini Mall, LLC's contributory trademark infringement was willful?

_____YES               _____NO

If you answered "Yes", then proceed to Question 24.  If you answered "No", then proceed to Question 26.

**Question No.  25: Damages for Willful Infringement, Airport Mini Mall, LLC**

If you answered "YES" to question No. 24, you have found Airport Mini Mall, LLC willfully infringed Oakley's registered trademarks.  You must now determine the amount of damages Airport Mini Mall, LLC must pay per trademark.  You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:     $_____

x _____ (number of trademarks)

=_____ total.

**Question No.  26: Damages for Trademark Infringement, Airport Mini Mall, LLC**

If you answered "NO" to question No. 24, you have found Airport Mini Mall, LLC did not willfully infringe Oakley's registered trademarks.  You must now determine the amount of damages Airport Mini Mall, LLC must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:       $_____

x _____ (number of trademarks)

=_____ total.

**Question No. 27: Contributory Liability, Yes Assets, LLC**

Do you find Defendant Yes Assets, LLC contributorily liable to <u>Luxottica</u> for trademark infringement?

_____YES                _____NO

If you answered "Yes", then proceed to Question 28.  If you answered "No", then proceed to Question 31

**Question No.  28: Willful Infringement, Yes Assets, LLC**

Do you find that Defendant Yes Assets, LLC's trademark infringement was willful?

_____YES                 _____NO

If you answered "Yes", then proceed to Question 29.  If you answered "No", then proceed to Question 30.

**Question No.  29: Damages for Willful Infringement, Yes Assets, LLC**

If you answered "YES" to question No. 28, you have found Yes Assets LLC willfully infringed Luxottica's registered trademarks.  You must now determine the amount of damages Yes Assets, LLC must pay per trademark. You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:      $_____

x _____ (number of trademarks)

=_____ total.

**Question No.  30: Damages for Trademark Infringement, Yes Assets, LLC**

If you answered "NO" to question No. 28, you have found Yes Assets, LLC did not willfully infringe <u>Luxottica's</u> registered trademarks.  You must now determine the amount of damages Yes Assets, LLC must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:        $_____

x _____ (number of trademarks)

=_____ total.

**Question No. 31: Contributory Liability, Yes Assets, LLC**

Do you find Defendant Yes Assets, LLC contributorily liable to <u>Oakley</u> for trademark infringement?

_____YES                  _____NO

If you answered "Yes", then proceed to Question 32.  If you answered "No", then proceed to Question 35

**Question No.  32: Willful Infringement, Yes Assets, LLC**

Do you find that Defendant Yes Assets, LLC's trademark infringement was willful?

_____YES                _____NO

If you answered "Yes", then proceed to Question 33.  If you answered "No", then proceed to Question 34.

**Question No.  33: Damages for Willful Infringement, Yes Assets, LLC**

If you answered "YES" to question No. 32, you have found Yes Assets LLC willfully infringed Oakley's registered trademarks.  You must now determine the amount of damages Yes Assets, LLC must pay per trademark. You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:     $_____

x _____ (number of trademarks)

=_____ total.

**Question No.   34: Damages for Trademark Infringement, Yes Assets, LLC**

If you answered "NO" to question No. 32, you have found Yes Assets, LLC did not willfully infringe Oakley's registered trademarks.  You must now determine the amount of damages Yes Assets, LLC must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:     $_____

x _____ (number of trademarks)

=_____ total.

**Question No. 35: Contributory Liability, Jerome Yeh**

Do you find Defendant Jerome Yeh contributorily liable to Luxottica for trademark infringement?

_____YES                   _____NO

If you answered "Yes", then proceed to Question 36.  If you answered "No", then proceed to Question 39.

**Question No. 36: Willful Infringement, Jerome Yeh**

Do you find that Defendant Jerome Yeh's trademark infringement was willful?

_____YES                 _____NO

If you answered "Yes", then proceed to Question 37. If you answered "No", then proceed to Question 38.

**Question No. 37: Damages for Willful Infringement, Jerome Yeh**

If you answered "YES" to question No. 36, you have found Jerome Yeh willfully infringed Luxottica's registered trademarks. You must now determine the amount of damages Jerome Yeh must pay per trademark. You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:     $_____

x _____ (number of trademarks)

=_____ total.

**Question No. 38: Damages for Trademark Infringement, Jerome Yeh**

If you answered "NO" to question No. 36, you have found Jerome Yeh did not willfully infringe Luxottica's registered trademarks. You must now determine the amount of damages Jerome Yeh must pay per trademark. You must award an

amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:   $_____

x _____ (number of trademarks)

=_____ total.

**Question No. 39: Contributory Liability, Jerome Yeh**

Do you find Defendant Jerome Yeh contributorily liable to <u>Oakley</u> for trademark infringement?

_____YES                    _____NO

If you answered "Yes", then proceed to Question 40.  If you answered "No", then proceed to Question 43.

**Question No.  40: Willful Infringement, Jerome Yeh**

Do you find that Defendant Jerome Yeh's trademark infringement was willful?

_____YES                    _____NO

If you answered "Yes", then proceed to Question 41.  If you answered "No", then proceed to Question 42.

**Question No.  41: Damages for Willful Infringement, Jerome Yeh**

If you answered "YES" to question No. 40, you have found Jerome Yeh willfully infringed <u>Oakley's</u> registered trademarks.  You must now determine the amount of damages Jerome Yeh must pay per trademark. You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:     $_____

x _____ (number of trademarks)

=_____ total.

**Question No.  42: Damages for Trademark Infringement, Jerome Yeh**

If you answered "NO" to question No. 40, you have found Jerome Yeh did not willfully infringe <u>Oakley's</u> registered trademarks.  You must now determine the amount of damages Jerome Yeh must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:     $_____

x _____ (number of trademarks)

=_____ total.

151

**Question No. 43: Contributory Liability, Donald Yeh**

Do you find Defendant Donald Yeh contributorily liable to <u>Luxottica</u> for trademark infringement?

_____YES                  _____NO

If you answered "Yes", then proceed to Question 44.  If you answered "No", then proceed to Question 47.

**Question No.  44: Willful Infringement, Donald Yeh**

Do you find that Defendant Donald Yeh's trademark infringement was willful?

_____YES                  _____NO

If you answered "Yes", then proceed to Question 45.  If you answered "No", then proceed to Question 46.

**Question No.  45: Damages for Willful Infringement, Donald Yeh**

If you answered "YES" to question No. 44, you have found Donald Yeh willfully infringed Luxottica's registered trademarks.  You must now determine the amount of damages Donald Yeh must pay per trademark. You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:     $_____

x _____ (number of trademarks)

=_____ total.

**Question No.  46: Damages for Trademark Infringement, Donald Yeh**

If you answered "NO" to question No. 44, you have found Donald Yeh did not willfully infringe Luxottica's registered trademarks.  You must now determine the amount of damages Donald Yeh must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:     $_____

x _____ (number of trademarks)

=_____ total.

**Question No. 47: Contributory Liability, Donald Yeh**

Do you find Defendant Jerome Yeh contributorily liable to <u>Oakley</u> for trademark infringement?

_____YES                   _____NO

If you answered "Yes", then proceed to Question 48.  If you answered "No", then proceed to Question 51.

**Question No.  48: Willful Infringement, Donald Yeh**

Do you find that Defendant Donald Yeh's trademark infringement was willful?

_____YES                   _____NO

If you answered "Yes", then proceed to Question 49.  If you answered "No", then proceed to Question 50.

**Question No. 49: Damages for Willful Infringement, Donald Yeh**

If you answered "YES" to question No. 48, you have found Donald Yeh willfully infringed Oakley's registered trademarks. You must now determine the amount of damages Donald Yeh must pay per trademark. You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:   $_____

x _____ (number of trademarks)

=_____ total.

**Question No. 50: Damages for Trademark Infringement, Donald Yeh**

If you answered "NO" to question No. 48, you have found Donald Yeh did not willfully infringe Oakley's registered trademarks. You must now determine the amount of damages Donald Yeh must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:   $_____

x _____ (number of trademarks)

=_____ total.

**Question No. 51: Contributory Liability, Alice Jamison**

Do you find Defendant Alice Jamison contributorily liable to <u>Luxottica</u> for trademark infringement?

_____YES                    _____NO

If you answered "Yes", then proceed to Question 52.  If you answered "No", then proceed to Question 55.

**Question No.  52: Willful Infringement, Alice Jamison**

Do you find that Defendant Alice Jamison's trademark infringement was willful?

_____YES                    _____NO

If you answered "Yes", then proceed to Question 53.  If you answered "No", then proceed to Question 54.

**Question No. 53: Damages for Willful Infringement, Alice Jamison**

If you answered "YES" to question No. 52, you have found Alice Jamison willfully infringed <u>Luxottica's</u> registered trademarks. You must now determine the amount of damages Alice Jamison must pay per trademark. You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:     $_____

         x _____ (number of trademarks)

         =_____ total.

**Question No. 54: Damages for Trademark Infringement, Alice Jamison**

If you answered "NO" to question No. 52, you have found Alice Jamison did not willfully infringe <u>Luxottica's</u> registered trademarks. You must now determine the amount of damages Alice Jamison must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:     $_____

         x _____ (number of trademarks)

         =_____ total.

**Question No. 55: Contributory Liability, Alice Jamison**

Do you find Defendant Alice Jamison contributorily liable to <u>Oakley</u> for trademark infringement?

_____YES                  _____NO

If you answered "Yes", then proceed to Question 56.  If you answered "No", then proceed to Question 59.

**Question No.  56: Willful Infringement, Alice Jamison**

Do you find that Defendant Alice Jamison's trademark infringement was willful?

_____YES                  _____NO

If you answered "Yes", then proceed to Question 57.  If you answered "No", then proceed to Question 58.

**Question No.  57: Damages for Willful Infringement, Alice Jamison**

If you answered "YES" to question No. 56, you have found Alice Jamison willfully infringed <u>Oakley's</u> registered trademarks.  You must now determine the amount of damages Alice Jamison must pay per trademark. You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:      $_____

x _____ (number of trademarks)

=_____ total.

**Question No.  58: Damages for Trademark Infringement, Alice Jamison**

If you answered "NO" to question No. 56, you have found Alice Jamison did not willfully infringe <u>Oakley's</u> registered trademarks.  You must now determine the amount of damages Alice Jamison must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:      $_____

x _____ (number of trademarks)

=_____ total.

**Question No. 59: Contributory Liability, Jenny Yeh**

Do you find Defendant Jenny Yeh contributorily liable to <u>Luxottica</u> for trademark infringement?

_____YES                _____NO

If you answered "Yes", then proceed to Question 60.  If you answered "No", then proceed to Question 63.

**Question No.  60: Willful Infringement, Jenny Yeh**

Do you find that Defendant Jenny Yeh's trademark infringement was willful?

_____YES                _____NO

If you answered "Yes", then proceed to Question 61.  If you answered "No", then proceed to Question 62.

**Question No.  61: Damages for Willful Infringement, Jenny Yeh**

If you answered "YES" to question No. 60, you have found Jenny Yeh willfully infringed Luxottica's registered trademarks.  You must now determine the amount of damages Jenny Yeh must pay per trademark. You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:    $_____

x _____ (number of trademarks)

=_____ total.

**Question No.  62: Damages for Trademark Infringement, Jenny Yeh**

If you answered "NO" to question No. 60, you have found Jenny Yeh did not willfully infringe Luxottica's registered trademarks.  You must now determine the amount of damages Jenny Yeh must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:    $_____

x _____ (number of trademarks)

=_____ total.

**Question No. 63: Contributory Liability, Jenny Yeh**

Do you find Defendant Jenny Yeh contributorily liable to <u>Oakley</u> for trademark infringement?

_____YES                    _____NO

If you answered "Yes", then proceed to Question 64.  If you answered "No", then proceed to the end of Form.

**Question No.  64: Willful Infringement, Jenny Yeh**

Do you find that Defendant Jenny Yeh's trademark infringement was willful?

_____YES                    _____NO

If you answered "Yes", then proceed to Question 65.  If you answered "No", then proceed to Question 66.

**Question No.  65: Damages for Willful Infringement, Jenny Yeh**

If you answered "YES" to question No. 64, you have found Jenny Yeh willfully infringed <u>Oakley's</u> registered trademarks.  You must now determine the amount of damages Jenny Yeh must pay per trademark. You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark: $_____

x _____ (number of trademarks)

=_____ total.

**Question No.  66: Damages for Trademark Infringement, Jenny Yeh**

If you answered "NO" to question No. 64, you have found Jenny Yeh did not willfully infringe <u>Oakley's</u> registered trademarks.  You must now determine the amount of damages Jenny Yeh must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark: $_____

x _____ (number of trademarks)

=_____ total.

**DATE_____       FOREPERSON_____**

**By Defendants:**   Defendants request that the Court consult with the parties and arrive at a verdict form that provides the jury with a proper framework for considering and reaching their verdict.

## ATTACHMENT J-1

## PLAINTIFFS' DEPOSITION DESIGNATIONS

### Testimony of Gregory J. Dickerson – December 14, 2015

| | | COUNTER BY DEFENDANT | |
|---|---|---|---|
| **PAGE** | **LINE** | **PAGE** | **LINE** |
| 6 | 8-10 | | |
| 9 | 12-17, 18-20, 21-23, 24-25 | | |
| 10 | 1-2, 3-6, 7-9, 10-12, 13-15, 16-17, 18-19, 23-25 | | |
| 11 | 1, 7-9, 10-12, 24-25 | | |
| 12 | 1-4, 5-9 | | |
| 14 | 25-25 | | |
| 15 | 1-5, 6-7, 8-9, 10-12, 24-25 | | |
| 16 | 1, 2-4, 21-24, 25 | | |
| 17 | 1-8, 9-15, 16-19, 20-25 | | |
| 18 | 1-3, 4-5, 6-10, 11-25 | | |
| 20 | 1-5, 6-9, 10-15, 16-18, 19-25 | | |
| 21 | 1-2, 3-4, 5-7, 14-16 | | |
| 22 | 25 | | |
| 23 | 1-25 | | |
| 24 | 1-3 | | |
| 24 | 4-7 | | |
| 27 | 23-25 | | |
| 28 | 1-2, 3-10, 11-17, 18-21, 22-25 | | |
| 29 | 1-8, 9-10, 24-25 | | |
| 30 | 1-1314-17 | | |
| 32 | 1-4, 8-19, 21-24, 25 | | |
| 33 | 1, 20-22 | | |
| 34 | 1-4, 5-8, 9-11, 12-13 | | |
| 35 | 8-21, 22-24 | | |
| 36 | 7-10, 13-23 | | |
| 39 | 5-8, 9-11, 12-22 | | |

| 41 | 3-5, 6-9, 10-25 | | |
|---|---|---|---|
| 42 | 1-7, 8-11, 12-22, 23-25 | | |
| 43 | 1-3, 4-25 | | |
| 44 | 1-5, 6-16 | | |
| 45 | 8-10, 11-13, 25 | | |
| 46 | 14-25 | | |
| 47 | 1-3, 4-6, 7-10, 11-13 | | |
| 50 | 1-5, 6-13, 14-15, 16-25 | | |
| 51 | 1, 23-25 | | |
| 52 | 1-8, 9-25 | | |
| 53 | 1-17 | | |
| 54 | 11-17 | | |
| 55 | 9-10 | | |
| 61 | 15-16, 17-19, 20-21, 22-24, 25 | | |
| 62 | 1-3, 4-7, 8-11 | | |
| 63 | 7-9, 10-16, 22-24 | | |
| 64 | 2-4, 19-23, 24-25 | | |
| 65 | 1-4, 20-25 | | |
| 66 | 1-7 | | |
| 67 | 3-16, 17-25 | | |
| 68 | 1-3, 4-6, 7-14, 15-24, 25 | | |
| 69 | 1-4 | | |
| 70 | 10-12, 13-16, 17-19, 20-25 | | |
| 71 | 1, 2-3, 4-6, 7-10, 11-14, 15-25 | | |
| 72 | 1-3, 4-5, 6-8, 9-12, 13-15, 16-18, 19-20 | | |
| 73 | 12-19, 20-25 | | |
| 74 | 1-2, 18-25 | | |
| 75 | 1-14 | | |
| 79 | 1-9, 19-22 | | |
| 80 | 9-10, 18-25 | | |
| 81 | 1-2, 3-4, 5-8, 9-10, 11-12, 13-14 | | |
| 83 | 11-13 | | |

| | | | |
|---|---|---|---|
| 87 | 9-11, 12-14, 15-17, 20-24, 25 | | |
| 88 | 1-10, 19-24, 25 | | |
| 89 | 1-6, 9-13, 14-19 | | |
| 92 | 6-8, 9-10, 11-16, 17-19, 20-25 | | |
| 93 | 1-8, 9-12, 13-14, 17-25 | | |
| 94 | 1-6, 7-10, 11-14, 15-25 | | |
| 95 | 1-10, 11-17, 18-25 | | |
| 96 | 1-2, 3-17, 22-24, 25 | | |
| 97 | 1, 3-13 | | |
| 100 | 12-17, 18-19, 20-23, 24-25 | | |
| 101 | 1, 2-8, 9-10, 11-24, 25 | | |
| 102 | 1-11, 12-16, 17-25 | | |
| 103 | 1-7, 8-10, 11-16, 17-25 | | |
| 104 | 1-18, 19-22, 23-25 | | |
| 106 | 16-21, 22-23, 24-25 | | |
| 107 | 1, 2-3, 18-20, 21-25 | | |
| 108 | 1-2, 16-22, 23-25 | | |
| 109 | 1-3, 4-6, 7-15 | | |
| 110 | 25 | | |
| 111 | 1, 7-9 | | |
| 112 | 16-18, 19-22, 23-25 | | |
| 113 | 1, 21-25 | | |
| 114 | 1-25 | | |
| 115 | 1-6, 7-22, 24-25 | | |
| 116 | 1-7 | | |
| 117 | 10-16, 17-19 | | |
| 119 | 17-25 | | |
| 120 | 1-2, 3-5, 6-19, 22-23 | | |
| 121 | 5-16, 21-25 | | |
| 122 | 1-4, 23-25 | | |
| 123 | 1-10, 11-12, 13-15, 16-18, 19-25 | | |
| 124 | 1-8, 9-14, 19-25 | | |
| 125 | 1-2, 20-25 | | |

| 126 | 1-10, 11-13, 14-17, 18-24 | | |
| 127 | 7-19, 20-23 | | |
| 128 | 13-17 | | |
| 129 | 13-25 | | |
| 130 | 1-4 | | |
| 131 | 1-7, 8-10, 11-16, 17-25 | | |
| 132 | 1-25 | | |
| 133 | 1-5, 6-11 | | |
| 134 | 9-14, 18-20, 21-22, 23-25 | | |
| 135 | 1-2, 3-8 | | |
| 136 | 7-10, 11-13, 16-17, 23-25 | | |
| 137 | 1-10 | | |
| 139 | 4-6, 11-12, 23-25 | | |
| 140 | 1, 7-9, 10-11, 15-16, 17-18, 19-24, 25 | | |
| 141 | 1, 2-3, 4-5, 6-11 | | |
| 146 | 22-25 | | |
| 147 | 1, 2-6, 13-20, 21-22, 25 | | |
| 148 | 1-7, 8-10, 11-12, 14-15, 20-22, 23-24, 25 | | |
| 149 | 1-4, 22-25 | | |
| 150 | 1, 11-16, 19-20 | | |
| 151 | 1-4, 5-7 | | |
| 152 | 14-19, 20-25 | | |
| 153 | 4-7, 8-16 | | |
| 154 | 23-25 | | |
| 155 | 1-20, 21-25 | | |
| 156 | 1-25 | | |
| 157 | 1-5, 6-9 | | |
| 163 | 13-21, 22-23, 24-25 | | |
| 164 | 1-4, 5-14 | | |
| 169 | 19-24, 25 | | |
| 170 | 1-2, 3-5, 6-9, 10-14, 15-17, 18-19, 20-21, 22-24 | | |
| 171 | 5-14 | | |
| 172 | 14-21 | | |

| | | | |
|---|---|---|---|
| 175 | 12-13, 16-25 | | |
| 176 | 1-13 | | |
| 179 | 7-8, 12, 15-1624-25 | | |
| 180 | 1-4, 5-25 | | |
| 181 | 1-2, 9-14, 15-24 | | |
| 182 | 15-22, 23-24, 25 | | |
| 183 | 1-5, 6-22, 23-25 | | |
| 184 | 1-3, 24-25 | | |
| 185 | 1-2, 3-5 | | |
| 186 | 14-15, 20-22, 23-25 | | |
| 187 | 1-2, 3-22 | | |
| 191 | 14-25 | | |
| 192 | 1-3, 4-5, 6-19, 20-22, 23-25 | | |
| 193 | 1, 2-4, 5-9, 10-15 | | |
| 195 | 25 | | |
| 196 | 1, 2-7, 10-15 | | |
| 198 | 13-20, 21-22, 23-25 | | |
| 199 | 1-3, 4-5, 6-25 | | |
| 200 | 1-17 | | |
| 204 | 2-8, 9-11, 12-14, 15-17, 18-21, 22-25 | | |
| 205 | 1, 2-6, 14-25 | | |
| 206 | 1-23, 24-25 | | |
| 207 | 1-8, 20-22, 23-25 | | |
| 208 | 1-10, 21-25 | | |
| 209 | 1, 9-13, 14-18 | | |
| 213 | 23-25 | | |
| 214 | 1-12, 16-18, 19-22, 25 | | |
| 215 | 1-7, 25 | | |
| 216 | 1-5, 6-9, 10-12, 21-24, 25 | | |
| 217 | 1-7, 8-10, 11-15, 16-24 | | |
| 227 | 13-19, 20-21, 22-23, 24-25 | | |
| 228 | 1-2, 3-6, 7-8, 9-10, 11-12 | | |
| 229 | 5-9, 10-14 | | |
| 232 | 18-23, 24-25 | | |

| 233 | 1-3, 4-5, 6-8, 9-12, 13-15, 16-25 | | |
| 234 | 1-6, 7-17, 18-19, 20-22, 23-25 | | |
| 235 | 1-3, 4-6, 7-15, 16-18, 19-20, 21-25 | | |
| 236 | 1-2, 3-4, 5-6, 7-25 | | |
| 237 | 1-8, 9-13, 14-15, 25 | | |
| 238 | 1, 2-4, 5-7, 22-23 | | |
| 243 | 6-17, 18-19 | | |
| 244 | 6-11, 12-18, 19-21, 22-25 | | |
| 245 | 1-11, 12-15, 16-17, 18-19, 20-21 | | |
| 246 | 11-15, 16-17, 18-25 | | |
| 247 | 1-11, 12-17 | | |
| 255 | 2-5, 6-7, 15-16, 25 | | |
| 256 | 1-2, 3-4, 5-12, 19-20 | | |
| 257 | 15-19, 20-21 | | |
| 258 | 9-11, 14-18 | | |
| 260 | 5-12, 13-16, 17-23, 24-25 | | |
| 261 | 1-3, 4-7, 8-18, 19-24 | | |
| 263 | 4-14, 19-21 | | |
| 265 | 1, 9-14, 15-17, 18-25 | | |
| 266 | 1, 2-11, 12-15 | | |
| 267 | 18-20, 21-24, 25 | | |
| 268 | 1-3, 4-7, 8-15, 16-17, 18-20, 21-25 | | |
| 269 | 1-2, 3-6 | | |
| 270 | 3-7, 8-10, 11-12, 13-16, 17-18, 20, 23-24, 25 | | |
| 271 | 1-25 | | |
| 272 | 20-21, 23 | | |
| 273 | 1, 2-9, 10-12, 17, 19-20, 21-25 | | |
| 274 | 1-6, 7-24 | | |
| 275 | 6-9, 10-11, 12-22, 23-25 | | |
| 277 | 1-6, 7-9 | | |

| | | | |
|---|---|---|---|
| 278 | 8-17, 21-25 | | |
| 279 | 1-2, 3-5, 13-18, 19-21, 22-24, 25 | | |
| 280 | 1, 2-3, 4-9, 10-17, 18-23, 24-25 | | |
| 281 | 1-2, 3-24, 25 | | |
| 282 | 1-6 | | |
| 283 | 5-6, 7-8, 9-25 | | |
| 284 | 1-14 | | |
| 287 | 15-18, 19-25 | | |
| 288 | 1-3, 4-5, 9-15, 16-25 | | |
| 290 | 1-7, 8-12 | | |
| 291 | 20-24, 25 | | |
| 292 | 1-4 | | |
| 293 | 17-21, 22-24, 25 | | |
| 294 | 1-4, 5-9 | | |
| 303 | 17-20, 22-25 | | |
| 304 | 1-8, 9-10, 11-13, 15, 17-25 | | |
| 305 | 1-6, 7-12 | | |
| 318 | 19-25 | | |
| 319 | 1-2 | | |
| 330 | 22-25 | | |
| 331 | 1-7 | | |
| 333 | 17-25 | | |
| 334 | 1, 8-9 | | |
| 339 | 12-15, 16-17, 20-22, 23-24, 25 | | |
| 340 | 1-6, 10-16, 25 | | |
| 341 | 1-2, 3-4, 5-7 | | |
| 342 | 4-12, 13-15, 17-18, 19-21 | | |
| 345 | 10-14, 15-23, 24-25 | | |
| 346 | 1-7, 8-13 | | |
| 352 | 8-10 | | |
| | | | |

**Testimony of Gregory J. Dickerson – December 15, 2015**

| | | COUNTER BY DEFENDANT | |
|---|---|---|---|
| **PAGE** | **LINE** | **PAGE** | **LINE** |
| 6 | 8-12 | | |
| 17 | 7-23 | | |
| 18 | 16-25 | | |
| 19 | 1-3 | | |
| 24 | 20-25 | | |
| 25 | 15-17, 22-25 | | |
| 26 | 1-8 | | |
| 30 | 12-16 | | |
| 31 | 1-6, 9-12, 13-25 | | |
| 32 | 1-6, 7-25 | | |
| 33 | 1-5, 25 | | |
| 34 | 1-13, 21-25 | | |
| 35 | 1-2, 6-15, 15-18 | | |
| 37 | 13-15 | | |
| 38 | 18-25 | | |
| 39 | 1-5, 12-15 | | |
| 40 | 21-25 | | |
| 41 | 1-12, 22-25 | | |
| 42 | 1-14 | | |
| 43 | 7-10, 18-19, 23 | | |
| 44 | 1-10, 16-20 | | |
| 45 | 19-20, 24-25 | | |
| 46 | 1-19 | | |
| 47 | 24-25 | | |
| 48 | 1-25 | | |
| 49 | 1-11 | | |
| 51 | 5-11 | | |
| 52 | 10-25 | | |
| 53 | 1-6, 14-22 | | |
| 54 | 13-16 | | |
| 55 | 8-15, 22-25 | | |
| 56 | 1-25 | | |

| 57 | 1-16 | | |
|---|---|---|---|
| 58 | 2-18, 21-25 | | |
| 59 | 1 | | |
| 61 | 4-7, 9-12 | | |
| 63 | 2-9, 11-16, 22-24 | | |
| 64 | 15-18 | | |
| 65 | 19-22 | | |
| 70 | 2-9 | | |
| 72 | 18-25 | | |
| 73 | 1-10 | | |
| 75 | 6-11 | | |
| 79 | 4-6 | | |
| 81 | 6-25 | | |
| 82 | 1-25 | | |
| 83 | 1-25 | | |
| 84 | 1-7, 13-25 | | |
| 85 | 1-25 | | |
| 86 | 1-8 | | |
| 87 | 1-25 | | |
| 88 | 1-25 | | |
| 89 | 1-10 | | |
| 90 | 21-25 | | |
| 91 | 1-2 | | |
| 93 | 23-25 | | |
| 94 | 1-7 | | |
| 95 | 20-25 | | |
| 96 | 1-6, 17-20 | | |
| 99 | 20-25 | | |
| 100 | 1-25 | | |
| 101 | 1-24 | | |
| 106 | 4-6, 10-12 | | |
| 108 | 8-14 | | |
| 110 | 8-11 | | |
| 118 | 8-10, 14-25 | | |
| 119 | 1 | | |
| 121 | 5-17 | | |

| 134 | 12-13, 19-25 | | |
| 136 | 8-14 | | |
| 142 | 19-21, 25 | | |
| 143 | 1-4, 7-18, 22-25 | | |
| 144 | 1-4, 7-8, 13-17, 20-22, 24-25 | | |
| 145 | 1-2, 6-16, 13-16, 20-24 | | |
| 147 | 16-20, 24-25 | | |
| 148 | 1-4, 8-13, 22-25 | | |
| 149 | 1-2 | | |
| 153 | 13-17 | | |
| 154 | 1-5, 14-19 | | |
| 155 | 1-4, 12-16 | | |
| 156 | 1-4, 8-25 | | |
| 157 | 1, 5-25 | | |
| 158 | 1-8, 12-25 | | |
| 159 | 3-7, 11-14, 16-17, 20-21 | | |
| 160 | 1-15, 17-20, 24 | | |
| 161 | 9-18, 22-24 | | |
| 162 | 3, 18-25 | | |
| 163 | 1-3, 5-11, 15-18, 22 | | |
| 164 | 10-21 | | |
| 165 | 19-21, 23 | | |
| 166 | 1-2, 13-16, 20-21 | | |
| 167 | 2-7, 10-24 | | |
| 168 | 8-12 | | |
| 170 | 22-25 | | |
| 171 | 16-25 | | |
| 172 | 2-8, 23-25 | | |
| 173 | 4, 12-17 | | |
| 175 | 4-7, 11, 15-25 | | |
| 178 | 25 | | |
| 179 | 1-10 | | |
| 181 | 7-10, 14, 22-25 | | |
| 182 | 1-8 | | |
| 183 | 7-10, 14 | | |

| 184 | 1-18 | | |
|-----|------|--|--|
| 185 | 15-18, 22 | | |
| 186 | 3-10, 17-19 | | |
| 187 | 10-13 | | |
| 187 | 3-10, 14-20 | | |
| 189 | 2-7, 10-17, 20-23 | | |
| 190 | 2, 13-18, 22-25 | | |
| 191 | 8-11 | | |
| 192 | 4-9, 11, 16-20, 23-25 | | |
| 193 | 1-4, 7-11, 16-18, 22 | | |
| 194 | 13-18 | | |
| 198 | 24-25 | | |
| 199 | 6-8, 19-24 | | |
| 200 | 2-7 | | |
| 201 | 14-16, 24-25 | | |
| 202 | 7-16, 19-24 | | |
| 203 | 16-21, 25 | | |
| 205 | 6-8, 11-13 | | |
| 206 | 3-10, 25 | | |
| 207 | 1-2, 19-25 | | |
| 208 | 1-20 | | |
| 209 | 15-25 | | |
| 210 | 1, 10-15, 18-22, 25 | | |
| 211 | 1, 6-8, 17-22 | | |
| 214 | 3-6, 22-25 | | |
| 215 | 1-8, 11-16, 25 | | |
| 216 | 1-2, 12-18 | | |

**Jerome Chienjung Yeh – December 16, 2015**

|  |  | COUNTER BY DEFENDANT | |
|---|---|---|---|
| **PAGE** | **LINE** | **PAGE** | **LINE** |
| 5 | 6-13, 24-25 | | |
| 6 | 1, 10-20 | | |
| 7 | 7-19, 22-24 | | |
| 8 | 2-13, 23-25 | | |
| 9 | 1-9 | | |
| 10 | 16-21, 23-24 | | |
| 11 | 2-6, 8-13, 19-22 | | |
| 12 | 1-25 | | |
| 13 | 1-17, 21-25 | | |
| 14 | 1-11, 24-25 | | |
| 15 | 1-2, 7-12, 15-17, 20-25 | | |
| 16 | 1-8, 11-25 | | |
| 17 | 1-15 | | |
| 18 | 2-15, 20-25 | | |
| 19 | 1-8 | | |
| 20 | 7-25 | | |
| 22 | 4-25 | | |
| 23 | 6-9, 11, 13-17 | | |
| 27 | 1-10, 16-17 | | |
| 28 | 4-5, 7-24 | | |
| 29 | 18-24 | | |
| 30 | 11-22 | | |
| 31 | 3-16, 21-25 | | |
| 32 | 1-11, 16-22 | | |
| 36 | 12-23 | | |
| 37 | 11-15, 24-25 | | |
| 38 | 1-4, 7-18 | | |
| 39 | 7-15 | | |
| 40 | 3-25 | | |
| 41 | 1-12, 21-25 | | |
| 42 | 1-6 | | |
| 43 | 12-24 | | |

| | | | |
|---|---|---|---|
| 44 | 2-15, 18-22 | | |
| 47 | 13-17 | | |
| 49 | 5-7, 15-21 | | |
| 50 | 10-12, 16-19 | | |
| 51 | 2-7, 12-15 | | |
| 52 | 3-5, 15-25 | | |
| 53 | 1, 8-13 | | |
| 54 | 14-25 | | |
| 55 | 8-25 | | |
| 56 | 11-13 | | |
| 57 | 1-3 | | |
| 59 | 11-18 | | |
| 62 | 5-17 | | |
| 67 | 14-21 | | |

## Testimony of Donald L. Yeh – December 17, 2015

| | | COUNTER BY DEFENDANT | |
|---|---|---|---|
| **PAGE** | **LINE** | **PAGE** | **LINE** |
| 6 | 11-2 | | |
| 8 | 1-8 | | |
| 9 | 22-25 | | |
| 10 | 11-23 | | |
| 11 | 4-5 | | |
| 14 | 24-25 | | |
| 15 | 1-15 | | |
| 16 | 4-8 | | |
| 17 | 1-18 | | |
| 18 | 15-21, 24-25 | | |
| 19 | 1-16, 24-25 | | |
| 20 | 1-25 | | |
| 21 | 1-10, 18-20 | | |
| 22 | 18-25 | | |
| 23 | 1-6, 11-16, 20-25 | | |
| 24 | 1-9, 17-23, 25 | | |
| 25 | 1-16, 21-25 | | |

| | | | |
|---|---|---|---|
| 26 | 1-23 | | |
| 27 | 17-19 | | |
| 28 | 11-14 | | |
| 29 | 2-6, 11-16, 20-25 | | |
| 30 | 1-21, 24-25 | | |
| 31 | 1-7, 23-25 | | |
| 33 | 17-25 | | |
| 34 | 1-5, 19-25 | | |
| 35 | 1-2, 5-10, 12-25 | | |
| 36 | 1, 5-18, 21-25 | | |
| 37 | 1-5, 24-25 | | |
| 38 | 1-7, 22-25 | | |
| 39 | 1-3, 16-25 | | |
| 40 | 1-2, 10-19, 25 | | |
| 41 | 1-9 | | |
| 42 | 24-25 | | |
| 43 | 1-25 | | |
| 44 | 1-12 | | |
| 46 | 6-10 | | |
| 49 | 5-12, 17-25 | | |
| 50 | 1, 10-18, 25, | | |
| 51 | 1-3, 7-11 | | |
| 53 | 15-25 | | |
| 54 | 2-4, 8-10, 12-25 | | |
| 55 | 1-3 | | |
| 56 | 10-24 | | |
| 58 | 4-25 | | |
| 59 | 1-13 | | |
| 62 | 24-25 | | |
| 63 | 1-25 | | |
| 64 | 1-4 | | |
| 66 | 9-12, 16-25 | | |
| 67 | 2-17 | | |
| 68 | 3-17 | | |
| 70 | 1-25 | | |
| 71 | 1-4, 10-11, 17-25 | | |

| 72 | 1-10 | | |
|---|---|---|---|
| 74 | 9-11, 13-24 | | |
| 75 | 4-8, 10-24 | | |
| 76 | 11-17 | | |
| 77 | 2-6, 8-15, 22-25 | | |
| 78 | 1-6, 24-25 | | |
| 79 | 1-2, 7-16, 18-25 | | |
| 80 | 1-3, 13-25 | | |
| 81 | 1-2, 4-19 | | |
| 82 | 6-16, 23-25 | | |
| 83 | 1-13 | | |
| 84 | 5-25 | | |
| 85 | 1-8 | | |
| 86 | 3-11 | | |
| 87 | 21-25 | | |
| 88 | 1-15 | | |
| 89 | 7-11, 16-25 | | |
| 90 | 1, 6-17 | | |
| 92 | 3-25 | | |
| 93 | 1, 20-25 | | |
| 94 | 1-23 | | |
| 95 | 9-20 | | |
| 96 | 8-22 | | |
| 97 | 6-16 | | |
| 98 | 17-25 | | |

## Testimony of Alice Jamison – December 18, 2015

| | | COUNTER BY DEFENDANT | |
|---|---|---|---|
| **PAGE** | **LINE** | **PAGE** | **LINE** |
| 5 | 14-15 | | |
| 8 | 20-22 | | |
| 11 | 4-6, 23-25 | | |
| 12 | 1-2 | | |
| 13 | 3-5, 8-25 | | |
| 14 | 20-25 | | |

| | | | |
|---|---|---|---|
| **15** | **1-5, 9-25** | | |
| **16** | **1-7** | | |
| **19** | **18-25** | | |
| **20** | **1-4, 10-15** | | |
| **21** | **11-25** | | |
| **22** | **1-6, 21-24** | | |
| **23** | **17-25** | | |
| **24** | **1-2, 5-10, 15-25** | | |
| **25** | **1, 10-17** | | |
| **26** | **7-13** | | |
| **27** | **11-24** | | |
| **28** | **3-20** | | |
| **29** | **8-12, 15-25** | | |
| **30** | **7-17** | | |
| **31** | **13-25** | | |
| **32** | **5-15** | | |
| **33** | **1-4, 9-13, 19-25** | | |
| **37** | **16-24** | | |
| **39** | **12-25** | | |
| **40** | **4-17, 24-25** | | |
| **41** | **1-3, 16-20** | | |
| **42** | **2-5** | | |
| **43** | **12-14** | | |
| **45** | **20-22** | | |
| **47** | **15-25** | | |
| **48** | **1-19, 21-25** | | |
| **49** | **1-7, 15-25** | | |
| **50** | **1, 6-8** | | |
| **51** | **17-18** | | |
| **54** | **10-13** | | |
| **55** | **15-25** | | |
| **56** | **1, 13-25** | | |
| **57** | **1-14, 20-21, 23-25** | | |
| **58** | **1-2** | | |
| **60** | **24-25** | | |
| **61** | **1-25** | | |

| | | | |
|---|---|---|---|
| **62** | **1-8, 12-25** | | |
| **63** | **1-17** | | |
| **64** | **5-14** | | |
| **65** | **2-5** | | |
| **66** | **18-20** | | |
| **67** | **7-18** | | |
| **68** | **3-7, 9-21** | | |
| **69** | **25** | | |
| **70** | **1-4, 6-17** | | |
| **71** | **3-21** | | |
| **72** | **6-12, 16-25** | | |
| **73** | **16-23** | | |
| **74** | **12-17, 19-25** | | |
| **75** | **1-18** | | |
| **77** | **2-5** | | |
| **78** | **2-6, 12-19** | | |
| **80** | **3-8** | | |
| **81** | **3-6** | | |
| **83** | **16-23, 25** | | |
| **84** | **1, 6-8** | | |
| **86** | **6-25** | | |
| **87** | **1-2** | | |
| **92** | **21-25** | | |
| **93** | **1-4, 9-22** | | |
| **100** | **7-25** | | |
| **101** | **1-11** | | |
| **102** | **6-20, 24-25** | | |
| **103** | **1-11, 15-20** | | |
| **104** | **11-15, 18-24** | | |
| **105** | **17-24** | | |
| **107** | **3-7** | | |
| **108** | **1-16, 25** | | |
| **109** | **1, 24-25** | | |
| **110** | **1-3, 15-23** | | |
| **111** | **2-19** | | |
| **113** | **15-25** | | |

| | | | |
|---|---|---|---|
| 114 | 2-8, 20-25 | | |
| 115 | 1-25 | | |
| 116 | 1, 3-8, 10-20, 25 | | |
| 117 | 1-13, 20-25 | | |
| 118 | 1 | | |
| 127 | 7-21 | | |
| 128 | 6-8, 10-12 | | |

**Defendants object to the presentation of witness testimony by deposition if the witness is available at trial. At present, there is no indication that any witness identified by the Plaintiffs in Attachment J-1 would be unavailable for trial.**